<hr />

No. 16,759.

BRADFORD *v.* THE FRANKFORT, ST. LOUIS AND TOLEDO RAILROAD COMPANY ET AL.

RAILROAD.—*Consolidation with Corporations of Other States.— Notice of Meetings of Stockholders.*—It is not essential to the validity of the determination of a railroad company in Indiana to consolidate with other companies in other States, that the stockholders should be called together by the notice, and conduct their meetings by the methods prescribed by the laws of such other States, under sections 5257, 5262, R. S. 1894, providing for consolidation of railroad corporations in Indiana with railroad corporations of other States, upon such terms as may be mutually agreed upon in accordance with the laws of the adjoining States, with whose roads connections are thus formed.

SAME—*Directors.—De Facto Officers.—Unconstitutional Act.*—Persons elected directors of a railroad corporation under an unconstitutional act, are *de facto* officers as to acts done by them under color of their office before the unconstitutionality of the act has been declared. (See note at end of opinion.)

SAME.—*Stockholder.— Consolidation.— Validity Of.— Estoppel.*— A stockholder of a constituent railroad corporation, who participated in the acts of the corporation, by which it agreed to and effected a consolidation with other companies, is estopped to deny the validity of the consolidation.

SAME.—*Consolidation.—Estoppel.—Notice.*— The effect of participation in proceedings for the consolidation of railroad companies, and acquiescence in such consolidation, to estop a constituent company to deny the validity of the consolidation as against the public pur-

chasers from the consolidated company, and mortgage bondholders of the latter, cannot be avoided because of a notice given by one of its stockholders at the time of its sale, asserting the invalidity of the consolidation, but not pointing out any defects other than those which both he and the company were already estopped to assert.

SAME.—*Consolidation.*—*Estoppel.*—A constituent railroad corporation is estopped to question the validity of a consolidation formed by it, with other corporations, where it participated in every step essential to the creation of a *de facto* corporation, by consolidation, and has stood by for years, permitting mortgage foreclosures as upon its property, permitting purchasers to acquire supposed titles, and new corporations to form, to purchase, to consolidate with still other corporations, and large sums to be expended in improving the road, and has suffered mortgage bonds to be issued and put upon the market—all without question.

SAME.—*Consolidation.*—*Presumptive Evidence.*—It will be presumed, in an action attacking the validity of a consolidation of railroad corporations, that the requisite stock to effect such consolidation was voted by a constituent corporation, where no issue in that respect is raised, under section 5147, R. S. 1894, giving directors of railroad companies power to enact by-laws governing the disposition of stock, property, and business of the company.

From the Grant Circuit Court.

*Woollen & Woollen* and *G. A. Henry*, for appellant.

*J. M. Butler*, *C. G. Guenther* and *S. O. Bayless*, for appellees.

HACKNEY, J.—The appellant, Moses Bradford, sued the Frankfort, St. Louis and Toledo Railroad Company, Sylvester H. Kneeland, The Bluffton, Kokomo and South Western Railroad Company, and the Toledo, St. Louis and Kansas City Railroad Company, on the 14th day of April, 1886. By cross-complaint the Frankfort, St. Louis and Toledo Railroad Company alleged, against her co-defendants, substantially the same facts pleaded in the complaint. The relief sought in each, said complaint and cross-complaint, was to declare the invalidity of a consolidation of the Frankfort, St. Louis and Toledo

Railroad Company, the Toledo, Delphos and Burlington Railroad Company, and the Toledo, Cincinnati and St. Louis Railroad Company, to adjudge the invalidity of certain stock and bonds of the first named company and for the appointment of a receiver for said company. The alleged interest of Bradford was as a stockholder of the Frankfort, St. Louis and Toledo Railroad Company whose stock had been depreciated by the alleged consolidation and the interest of the cross-complainant was in establishing her franchises and property rights, of which she alleged she had been deprived by said alleged consolidation. The theory of each, the complaint and cross-complaint, was that said consolidation was invalid, *first*, because of the reduction, on May 11, 1880, of the number of directors of the Frankfort, St. Louis and Toledo Railroad Company from thirteen to five, said reduction having been made at an annual meeting of the stockholders convened pursuant to notice, but not of notice that such change was contemplated, and because a reduction of directors to five in number was authorized only by an act of the Legislature, approved June 17, 1852 (R. S. 1881, section 3891), which was unconstitutional by reason of the failure of the title to state the object of the act, the board so elected having negotiated and participated in the consolidation ; *second*, that the three lines attempting consolidation were parallel and competing lines and did not cross or intersect, the constitution and laws of Illinois, in which State one of such lines was organized, forbidding the consolidation of competing lines ; *third*, that the Frankfort, St. Louis and Toledo Railroad Company was represented in said attempted consolidation by less than a majority of its board of directors, considered either as thirteen or five, and by directors who had conspired with the other constituent companies to fraudulently deprive said company of its

franchises, right of way and property; *fourth*, that the articles of consolidation did not comply with the laws of Ohio, Indiana and Illinois, the respective States of the incorporation of said companies, in the requirements of fifteen directors and as to notice to stockholders and proceedings following the agreement of consolidation; *fifth*, that a notice, not signed by the secretary or a majority of the directors was given of a meeting of the stockholders of said Frankfort, St. Louis and Toledo Railroad Company on February 21, 1882, to ratify and confirm the articles of consolidation of said companies; that of the 13,214 shares, entitled to vote at such meeting, but 12,867 shares were represented and voted, and that said meeting was held at an office different from that named in the notice; and, *sixth*, that the corporate seal of the cross-complainant was not affixed to said articles, and they were not signed by its legal president and secretary, and no certificate was endorsed by the several secretaries of the companies upon said articles, nor affidavits made by the presidents, that the articles were adopted by a two-thirds vote, and such certificate filed in the offices of the secretary of State and the several recorders.

The principal question before this court arises upon the ruling of the circuit court in overruling the demurrers of the appellants, Bradford and the Frankfort, St. Louis and Toledo Railway Company, to the affirmative answers of the appellees to the complaint and cross-complaint. The answer to the complaint alleged the presence, active participancy, and concurrence of Bradford in the meetings of the stockholders of May 11, 1881, and February 21, 1882, that he voted to change the number of directors, voted for the five chosen, voted for the consolidation and voted to confirm the consolidation agreed upon. It was alleged in both the answer to the complaint and

that to the cross-complaint, that the companies consolidating had not constructed parallel lines but merely had them in contemplation; that notice of the stockholders' meeting of February 21, 1882, was duly published for more than thirty days previous to such meeting, in newspapers of general circulation in the counties through which the Frankfort, St. Louis and Toledo Railroad was constructed and contemplated, that said notice specified, as one of the objects of the meeting, the purpose to take action upon the proposed consolidation, and that said notice was signed by the secretary of said company; that said meeting was held at the time and place designated in the notice; that 13,214 shares of stock were authorized to be voted at said meeting and that 12,867 shares were represented and voted; that the shares so represented were voted unanimously in favor of such consolidation and in favor of directions to the president and secretary of the company to execute the articles of consolidation reported and considered by the meeting; that said articles of consolidation were executed as directed, and were acquiesced in by all parties for six years before this suit was instituted.

It is further alleged, in each of said answers, that H. R. Low & Co., a railway construction company, by contract with the Frankfort, St. Louis and Toledo Railroad Company, had agreed to construct a line of railway from Warren, Huntington county, to Kokomo, Howard county, for a stated sum per mile, for all of the stock in said company, excepting the stock to issue to localities voting aid to such construction, and for certain first mortgage bonds of said railway company; that pending such contract, and while said railway was under construction, the construction company contracted with the Toledo, Delphos and Burlington Railway Company, to construct, for said latter company, a railway over the same line,

which railway had theretofore been in contemplation as a part of that company's railway, to transfer to said railway company all of the capital stock and mortgage bonds of the Frankfort, St. Louis and Toledo Railway Company, all to be paid for by said Toledo, Delphos & Burlington Railroad Company, as agreed; that in and for the subsequent construction of said line the last named company paid large sums of money, and became the owner of said stock and bonds, and upon the completion of the railway, the possession thereof was delivered to said last named company; that the money, so expended by the Toledo, Delphos and Burlington Railroad Company, was raised by a mortgage, on January 17, 1880, of its line of railway, so theretofore constructed, and as contemplated, including the said line from Warren to Kokomo; that upon default in the interest upon said latter mortgage, and during the months of November and December, 1885, and March, 1886, there were foreclosures, sale and deeds rendered and executed for the Toledo, Delphos and Burlington Railway, from Toledo, Ohio, to Kokomo, Indiana, covering and including the line claimed to have been owned by the cross-complainant; that the said Kneeland purchased and became the owner of said lines of railway, and sold the same to the appellee corporation, the Bluffton, Kokomo and Southwestern Railroad Company; that the Bluffton, Kokomo and Southwestern Railroad Company was thereafter legally consolidated with certain other railroad corporations, and thereby formed the Toledo, St. Louis and Kansas City Railroad Company, appellee, and that said Kneeland and said last named company have expended large sums of money upon said railway, between Warren and Kokomo, in extending it from a narrow to a broad gauge line, and for such purpose have issued mortgage bonds thereon, all with the knowledge and

entire acquiescence of the complainant and the cross-complainant, until this suit was instituted.

The sufficiency of the notice of the stockholders' meeting of May 11, 1881, and whether the act of the Legislature of June 17th, 1852, is constitutional, would seem to be wholly immaterial, if the directors, consisting of five members, were *de facto* officers, or if the action of the stockholders, in the meeting of February 21st, 1882, had the effect to bind the Frankfort, St. Louis and Toledo Railroad Company by the articles of consolidation. And, it would seem that, whether the act in question was constitutional, or whether the Frankfort, etc., company was estopped by the action of ninety-seven *per centum* of its stock, in making the consolidation, directed February 21st, 1882, the appellant, Bradford, by his participancy in all of the proceedings, which he characterizes as fraudulent and without authority, and in which he acquiesced for nearly six years, and until new rights attached and large investments are made, should have no standing to claim the overthrow of his own action.

Our first inquiry, therefore, will be as to the validity of the action of the stockholders of the Frankfort, St. Louis and Toledo Railroad Company, of February 21st, 1882. The meeting was called by thirty days' publication of the time, place, and object thereof; ninety-seven *per centum* of the capital stock was represented at, and voted in favor of, the consolidation, and directed the president and secretary to execute the articles of consolidation, which were read to, and approved by, the meeting, and said articles were executed by said officers, as directed. By section 3893, R. S. 1881, (section 5143, R. S. 1894), it is provided that special meetings of the stockholders may be called at any time, "by giving thirty days' public notice, of the time and place of the meeting, * * in a newspaper published in each county

through which such road shall be intended to run." The answers alleged a compliance with these provisions. Neither the complaint nor the cross-complaint alleged the nonexistence of by-laws, or that under by-laws the number of shares voting for the consolidation were less than the number required by the by-laws, and the issue was not, therefore, tendered for response by the answer. Under section 3897, R. S. 1881 (section 5147, R. S. 1894), the directors of railway companies possessed power to enact by-laws governing the disposition of stock, property, and business of the companies. There being no such issue, we must presume that the requisite stock was voted.

Much of the contention of the appellants rested upon the assumption that, under the laws of Illinois, and of Ohio, the action of the stockholders of the cross-complainant, on the 21st day of February, 1882, was invalid, because of the failure, in obtaining the consent of such stockholders to said consolidation, to observe such laws in the notice of the meeting, and in other respects relating to the separate action of said company. This assumption arose upon sections 3971, 3975, R. S. 1881; sections 5257, 5262, R. S. 1894. These sections gave power to the Frankfort, St. Louis and Toledo Railroad Company to consolidate and merge its stock with that of any other company, making of such consolidated companies one joint stock company, "upon such terms as may be by them mutually agreed upon, in accordance with the laws of the adjoining State, with whose road or roads connections are thus formed." We do not believe that it was the legislative intention, in this provision, to incorporate by reference the laws of Illinois and Ohio as a part of our law for the determination of the distinct rights, powers and privileges of an Indiana railway company. We cannot concur in the theory that this enactment was intended to provide that, when

stockholders of an Indiana company desired to agree among themselves that their company should consolidate with other companies in Illinois and Ohio, they should be called together by the notice, and conduct their meeting by the methods prescribed by the laws of such other States. So far as the question of consolidation affected alone the Indiana company, and the steps by which it should obtain the concurrence of its own stockholders, we have no doubt the Legislature never intended to subject such company to the provisions of the constitution and laws of States, other than Indiana. If we are correct in this conclusion, the words, "in accordance with the laws of the adjoining State," as found in section 3971, *supra*, were intended to qualify the general power of consolidation, to the extent that such consolidation, or the "*terms*" of the mutual agreement of consolidation, be not in conflict with the laws of adjoining States. Certainly, the several constituent companies could not be interested in the method by which each secured the concurrence of its stockholders, provided only that such concurrence was sanctioned by the laws of the State of the company whose stockholders so concur, and, most certainly, Indiana would not be interested in abandoning her own laws for the government of her corporations, and in substituting the laws of another State, when the question of government was one in respect, to which Indiana alone would be interested.

Up to the point of consolidation there was no irregularity, or possible invalidity, of the proceedings of the Indiana corporation, unless it arose from the alleged want of authority in the board of directors, consisting of five members, to call the meeting of February 21, 1882. The statute directed the call by the board and it is alleged in the answers, that the call was by order of the board. If, from the want of power to constitute a

board of five members, the acts of those chosen were void, it is regarded as exceedingly doubtful, if the action of the stockholders would not bind the corporation, and the participating stockholder, Bradford, against all the world, save, possibly, the few shares of stock not present and participating in the meeting.   Notice is required for the benefit of the stockholders, and is not so imperative that the stockholders themselves may not waive it. In Green Brice's Ultra Vires it is distinctly laid down, that:  "Preliminaries, such as the issuing of formal notices, the publishing of advertisements, and the like, prior to meetings; and regulations relating to the manner of conducting such meetings," are requisites merely directory, p. 520, and authorities cited on p. 522.   But we need not place the decision of the question upon the doctrine of waiver, or that the requirements were directory.   If, conceding for the purposes of the inquiry the act of June 17, 1852, was unconstitutional, and there existed no power to reduce the number of directors from thirteen to five, we must at least assert that there was colorable authority for the proceeding, and that, until the law should be declared unconstitutional, the acts of those chosen under such colorable authority would be the acts of *de facto* officers. See *Parker* v. *State, ex rel.,* 133 Ind. 178 (18 L. R. A. 567), and authorities there cited; also *Roberts* v. *Hill,* 137 Ind. 215; Boone Corp., section 140; Wood Railway Law, Vol. 1, section 148; Morawetz Private Corp., Vol. 2, section 638; *King* v. *Bedford Level,* 6 East, 356.   In the last cited case Lord Ellenborough gave the following definition: "An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law."

In the present case the corporation, upon the letter of the statute, elected five directors, and turned over to

them its affairs, and permitted them to transact its business without denial or question. They were *de facto* officers, even if we were required to hold the law of June 17th, 1852, unconstitutional. We do not, however, pass upon the validity of that law.

But, conceding the existence of the irregularities in the proceedings of the consolidation, though none occur to us to affect the validity of the consolidation, we are confronted with the proposition that the present company, and we may say the same of the organization by consolidation, is a *de facto* corporation, sustaining an important relation to the public and exercising powers and privileges under the laws of the State, with the acquiescence of the authorities of the State. Such being the case, can a constituent corporation, complaining of such irregularities, attack and overthrow the *de facto* corporation, thereby dissolving such corporation, dislodging the interest of the public and condemning the corporate rights of that corporation? The interests of the public forbid it, and, if the irregularities complained of were *ultra vires*, the attempt to do so is but the usurpation of the exclusive prerogatives of the State. The corporation, the Frankfort, St. Louis and Toledo Railroad Company, occupied no better or different attitude than that occupied by Bradford. It participated in every step essential to the creation of a *de facto* corporation by consolidation, and it has stood by for years permitting mortgage foreclosures as upon its property, permitting purchasers to acquire supposed titles and new corporations to form, to purchase, to consolidate with still other corporations, and large sums to be expended in extending the gauge, suffering mortgage bonds to be issued and put upon the market, all without question. Leaving out of view the rights of stockholders not present at the 21st of February meeting, and offering no

intimation as to their rights or as to the existence of an estoppel against them, we cannot avoid the conclusion that equity will not permit those who participated in the acts complained of to stand by, taking the chances of good or ill fortune from their acts, and then, when such acts have proven fruitless, to complain that such acts were irregular or even fraudulent and to seek relief therefrom. If equity will not so permit, the answers were good and the appellants must both fail. In *Swartwout* v. *Michigan Air Line Railroad Co.*, 24 Mich. 389, Judge Cooley said of this question : "Where there is thus a corporation *de facto*, with no want of legislative power to its due and legal existence ; where it is proceeding in the performance of corporate functions, and the public are dealing with it on the supposition that it is what it professes to be, and the questions suggested are only whether there has been exact regularity and strict compliancewith the provisions of the law relating to incorporation ; it is plainly a dictate alike of justice and of public policy, that in controversies between the *de facto* corporation and those who have entered into contract relations with it, *as corporators* or otherwise, that such questions should not be suffered to be raised." See also *Bates* v. *Wilson*, 14 Col. 140 ; *Merchants' and Planters' Line* v. *Waguner*, 71 Ala. 581 ; *Goodrich* v. *Reynolds*, 31 Ill. 490 ; *City of St. Louis* v. *Shields*, 62 Mo. 247 ; *Boise City, etc., Co.* v. *Eben,* 1 Idaho, 790. If a stockholder participate in the transactions complained of, he will be denied relief. *Parsons* v. *Joseph*, 92 Ala. 403 (406) ; *Battelle* v. *North Western, etc., Co.*, 37 Minn. 89 ; *Venner* v. *Atchison, etc., R. Co.*, 28 Fed. Rep. 581 ; *Barr* v. *Pittsburg, etc., Co.*, 51 Fed. Rep. 33 ; *Rio Grande Cattle Co.* v. *Burns, Walker & Co.*, 82 Texas, 50 ; *Jones* v. *Milton, etc., Turnp. Co.*, 7 Ind. 547 ; *Judah* v. *American Live Stock Co.*, 4 Ind. 333.

Bradford *v.* The Frankfort, St. Louis and Toledo R. R. Co. *et al.*

Many phases of the various questions involved in the record have been very fully and ably discussed by counsel, and while we do not follow them through each step in this contention, we think we have reached the essence of the issue and that all of the phases presented by counsel must inevitably fall within the principles which have controlled our conclusions, unless possibly it be that as to whether title to the property in question passed by and under the decree foreclosing the mortgage by the Toledo, Delphos and Burlington Railroad Company. As to that question, if we are correct in concluding that under the consolidation the property passed beyond the reach, in this suit, of the appellants, it becomes unimportant to inquire as to the effect of the foreclosure standing alone. In our opinion the judgment of the circuit court was clearly right, and it is affirmed.

Filed May 17, 1895.

## ON PETITION FOR REHEARING.

HACKNEY, J.—The appellee the Frankfort, St. Louis and Toledo Railroad Company has presented an earnest petition for a rehearing. The only question presented which did not receive full consideration on the original hearing, is as to the effect of a notice given by Moses Bradford at the time of the foreclosure sale mentioned in the original opinion, to the purchasers, to the general effect that he held paid up stock in said company; that he had paid taxes voted in aid of the construction of said road; that the then existing consolidation of said company with the Toledo, Delphos and Burlington Railroad Company, and the Toledo, Cincinnati and St. Louis Railroad Company, was not legal and that he would "contest the validity" of the alleged consolidation. The effect of this notice, it is insisted, was to preclude the

purchasers, the subsequent consolidated companies, the mortgage bond holders, and the public from asserting the estoppel held by us in the original opinion to be effective against this petitioner.    At most, this general notice could not affect the public interests which are held of paramount importance.    Nor are we advised of its effect upon subsequent investors by consolidation and by purchase of bonds who are not claimed to have been advised of it.    The weakness of the notice is not alone in its failure to advise of a single instance in which any of the original proceedings for and of consolidation were irregular or invalid, but its further weakness is in the declaration of claimed rights, not of the petitioner but of Bradford, whose own participancy in the acts of which he complained were then known and have since been held to close his mouth to question their validity.    As to the rights of the petitioner, and as to those of Bradford, we can as well say, the notice gave no warning not contained in the corporation records, as disclosed by the allegations of the answers.    We are not advised by the record nor by argument of counsel that the Bradford notice put any one upon inquiry as to matters not apparent upon the face of the proceedings of consolidation, and, conceding that the petitioner may avail herself of Bradford's notice, its effect was but to advise of those things set up in the answers which we have held sufficient against the charge of invalidity.    Above all, however, this notice could not excuse the petitioner against her six years of silence and inactivity which have permitted public interests to attach, which public interests, as we held in the original opinion, forbid the present attack upon the new corporation by consolidation.

This result was, we think, correctly reached upon the theory that it was unimportant whether the organization

of the board of directors, consisting of five members, was valid or not, and whether their call of the stockholders' meeting was regular or not. It is therefore unimportant to consider now the regularity of that board's proceeding as insisted upon by the petitioner.

The petition for a rehearing is overruled.

Filed October 30, 1895.

NOTE.—The character of directors *de facto* in corporations is the subject of annotation to *Waterman* v. *Chicago & I. R. Co.* (Ill.), 15 L. R. A. 418.