BRENDLE v. SMITH et al.

District Court, S. D. New York.

June 26, 1942.

Geist & Netter, of New York City, for plaintiff.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, for defendants Francis B. Davis, Jr., et al.

Arthur, Dry & Dole, of New York City, for defendant United States Rubber Co.

Gifford, Woody, Carter & Hays, of New York City, for defendant Henry Rogers Winthrop.

RIFKIND, District Judge.

This is a motion by defendants to stay all proceedings in this suit until a final determination of a suit pending in the New York Supreme Court.

This suit (hereinafter called the Brendle suit), like the one pending in the state court (hereinafter called the Consolidated Action), is a stockholder's derivative action for the benefit of United States Rubber Company. The procedural events preceding the making of the pending motion have become characteristic of such actions. Since they constitute the normal life history of the stockholder's derivative action it is instructive to set them forth in some detail.

On April 17, 1941, a stockholder's derivative action for the benefit of United States Rubber Company, entitled Arthur Diamond v. Francis B. Davis, Jr., et al., was commenced in the New York Supreme Court, by the service of a summons and complaint. A motion to dismiss some of the causes of action alleged in that complaint was decided by that court and the opinion thereon was published in the New York Law Journal on August 14, 1941. News of that decision also appeared in the New York Times on that day. The following day another suit was commenced in the same court, by one Horn, by the service of a summons unaccompanied by a complaint. On August 18th an additional suit was instituted by one Gelfand. By December 3, 1941, twelve separate actions for the benefit of the same corporate defendant were pending in that court.

On that day the New York Supreme Court made an order changing the venue of such of the actions as had been commenced outside of New York County to that county, consolidating all the actions, designating one firm of attorneys to conduct the pre-trial examinations and the trial, subject to the right of the several attorneys for the respective plaintiffs to conduct such additional examinations as the judge might permit. All future proceedings by other stockholders of the corporate defendant based upon the same facts were stayed pending a determination of the Consolidated Action.

Before the pending motion was made, two applications for intervention were also heard by the state court, of which one was granted on consent and the other denied.

The Brendle suit was commenced in this Court on January 30, 1942. Federal jurisdiction was founded on diversity of citizenship. The plaintiff alleged that he was the holder of twenty shares of the common stock of the beneficiary corporation.

At the time of argument of this motion the status of the state court actions was as follows: An order of the Appellate Division, Diamond v. Davis, 263 App.Div. 68, 31 N.Y.S.2d 582, was entered on December 12, 1941, dismissing the 6th cause of action of the Diamond complaint, with leave to amend. On February 13, 1942, a motion for summary judgment, made by defendants, was granted with respect to the first three causes of action alleged in the Diamond complaint. On October 21, 1941, the cause was noticed for trial by plaintiff for the March, 1942, term. Some answers have been interposed but it does not appear that any answer has been interposed to the fifth cause of action of the Diamond complaint; nor does it appear that advantage has been taken of the leave granted to amend the sixth cause of action.

There is substantial similarity between the parties defendant in the Brendle suit in this Court and the parties defendant in the

Consolidated Action in the state court. Three defendants named in the Consolidated Action are omitted from the Brendle complaint in this Court, ostensibly for the reason that they are residents of the same state as the plaintiff and their inclusion would divest this Court of jurisdiction. Twenty-one defendants have been served in the Consolidated Action; eight in the Brendle suit.

The gravamen of the Brendle complaint is that the directors of the corporation negligently and fraudulently miscomputed the amounts to be credited under a "Managers' Shares Plan" and an "Employees' Bonus Plan" established by the beneficiary corporation. The plans and the respects wherein the directors are alleged to have violated their terms, as well as acts in violation of sound accounting practices, are set forth with particularity. The validity of the plans themselves is not impugned.

The Diamond complaint charges a great variety of wrongs alleged to have been committed by the directors, attacks the validity of the plans but does not specifically charge miscomputation. However, miscomputation is charged in the complaint served by Seidenberg and that served by Neumeyer, both of which have been consolidated with the Diamond action. True, the two complaints mentioned do not elaborate on the charge of miscomputation with the circumstantial detail of the Brendle complaint but they do raise the issue and so the defendants concede upon this motion.

No examinations before trial were had at the time of the argument.

Two additional items deserve mention. One is that, unlike most stockholder's suits in which the beneficiary corporation occupies a neutral position, in this case the corporation is represented by counsel and is actively defending the actions complained of. The other is that defendants claim, as matter addressed to the court's discretion, that they are engaged in work which is crucial in the war-making efforts of the United States and that they should not be diverted from that effort by the necessity of defending two suits if one will accomplish all that is necessary for the benefit of the corporation.

A district court has power to stay proceedings in a suit pending before it. Whether the power should be exercised is a question addressed to sound judicial discretion. Landis v. North American Co., 1936, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153. And it matters not whether the stay is made dependent on the disposition of another suit in a federal court, Landis v. North American Co., supra, or in a state court. Atlas Life Insurance Co. v. W. I. Southern, Inc., 1939, 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987.

In the Landis case the court said at page 254 of 299 U.S., at page 166 of 57 S.Ct., 81 L.Ed. 153: "Apart, however, from any concession, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. Kansas City Southern Ry. v. United States, 282 U.S. 760, 763, 51 S.Ct. 304, 305, 306, 75 L.Ed. 684; Enelow v. New York Life Ins. Co., 293 U.S. 379, 382, 55 S.Ct. 310, 311, 79 L.Ed. 440. True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. Considerations such as these, however, are counsels of moderation rather than limitations upon power. There are indeed opinions, though none of them in this court, that give color to a stricter rule. Impressed with the likelihood or danger of abuse, some courts have stated broadly that, irrespective of particular conditions, there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger. Dolbeer v. Stout, 139 N.Y. 486, 489, 34 N.E. 1102; Rosenberg v. Slotchin, 181 App.Div. 137, 138, 168 N.Y.S. 101; cf. Wadleigh v. Veazie, Fed. Cas.No. 17,031; Checker Cab Mfg. Co. v. Checker Taxi Co., D.C., 26 F.2d 752; Jefferson Standard Life Ins. Co. v. Keeton [4 Cir.], 292 F. 53. Such a formula, as we view it, is too mechanical and narrow. Kansas City Southern Ry. v. United States, supra; Friedman v. Harrington, C.C., 56 F. 860; Amos v. Chadwick, L.R. 9 Ch.Div. 459; L.R. 4 Ch.Div. 869, 872. All the cases advancing it could have been ade-

quately disposed of on the ground that discretion was abused by a stay of indefinite duration in the absence of a pressing need. If they stand for more than this, we are unwilling to accept them. Occasions may arise when it would be 'a scandal to the administration of justice' in the phrase of Jessel, M.R. (Amos v. Chadwick, L.R. 9 Ch.Div. 459, 462), if power to coordinate the business of the court efficiently and sensibly were lacking altogether."

In the Atlas case the court adverted to this power in very broad language thus, at page 572 of 306 U.S., at page 662 of 59 S.Ct., 83 L.Ed. 987: "Whether there are other special circumstances in the present case entitling the insurance company to equitable relief; .* * * are questions which the certificate does not exclude from the case and which have not been briefed or argued here. Yet they are questions which may require consideration before a court can determine whether the equity suit should be dismissed or whether the bill should be retained without further proceedings pending disposition of the suit at law, as may be done by the equity court in its discretion."

When discretion should be exercised in favor of such a stay is a question not susceptible of easy generalization. Frees v. John Shields Construction Co., C.C. S.D.N.Y.1906, 145 F. 1020; Hennessy v. Tacoma Smelting & Refining Co., 9 Cir., 1904, 129 F. 40.

The latter case was a stockholder's derivative suit. In reversing the denial of a stay the Circuit Court of Appeals said at page 45 of 129 F.: "As that court had obtained jurisdiction of these issues before the present suit was begun, and the cause is there pending for final determination, all questions involved in that suit should, we think, be left for the adjudication of that court, unaffected by any views that have been expressed in the opinion in the court below." Cf. City of Ironton v. Harrison Construction Co., 6 Cir., 1914, 212 F. 353; Doane v. California Land Co., 9 Cir., 1917, 243 F. 67; City of Livingston v. Monidah Trust, 9 Cir., 1919, 261 F. 966.

An examination of a number of decisions in the district courts, both reported and unreported, shows no very clear line of demarcation which would serve as a guide to the exercise of the court's discretion. Stays have been granted in the following cases: Schwartz v. Kaufman, D.C.E.D. N.Y. Jan. 9, 1940, 46 F.Supp. 318, Campbell, J.; Singer v. Bishop, D.C.S.D.N.Y. May 27, 1940, Conger, J.[1]

Stays have been denied in the following: Finkelstein v. Boylan, D.C.S.D.N.Y. March 13, 1940, Clancy, J.[1]; Ratner v. Paramount Pictures, Inc., D.C.S.D.N.Y. March 20, 1942, 46 F.Supp. 339, Bondy, J.

The courts of New York and certainly those of the First Department have been disposed to grant stays under similar circumstances. Koff v. Hochschild[1], N.Y.Sup. December 11, 1939, (Mr. Justice Hammer); Heller v. Boylan, Sup., 36 N.Y.S.2d 292; Marmorstein v. Guaranty Trust Co.,[1] N.Y. Sup., April 18, 1939 (Mr. Justice Schmuck); Levy v. Pacific Eastern Corporation, 1935, 154 Misc. 655, 277 N.Y.S. 659; Milvy v. Sperry Corp., Sup., 36 N.Y.S.2d 881; Hornstein, Problems of Procedure in Stockholder's Derivative Suits, 1942, 42 Columbia Law Review 574, 579.

The cases I have selected for citation deal with the problem as applied to stockholder's derivative suits. Such suits, in my opinion, constitute a class by themselves and present a unique problem.

The multiplication of such suits has already received legislative attention. See, for instance, § 61-a of the New York General Corporation Law; New York Law Revision Commission, Leg. Document (1942) No. 65(J) discussed in Hornstein, op. cit.; Chapter 851 New York Laws of 1942; Rule 23(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. During the past few years many corporations have by by-law attempted to provide indemnification for directors against the risk of stockholder's suits.

Despite the numerous abuses which have developed in connection with such suits they have accomplished much in policing the corporate system especially in protecting corporate ownership as against corporate management. They have educated corporate directors in the principles of fiduciary responsibility and undivided loyalty. They have encouraged faith in the wisdom of full disclosure to stockholders. They have discouraged membership on boards by persons not truly interested in the corporation. To counterbalance these benefits, to some extent they have resulted in the substitution of irresponsible dummy

---

[1] No opinion for publication.

directors for inattentive directors. The measure of effectiveness of the stockholder's derivative suit cannot be taken by a computation of the money recovery in the litigated cases. The minatory effect of such actions has undoubtedly prevented diversion of large amounts from stockholders to managements and outsiders. Corporate attorneys now have an arsenal of authorities to support their cautioning advice to clients who may be disposed to risk evasion of the high standard the courts have imposed upon directors.

■ Whether from this larger point of view the stockholder's derivative suit is still socially an uneconomical device for policing corporate management, it is difficult to estimate. That it is slow, cumbersome and·expensive to all concerned, if the calculation is limited to the actual cases which reach the courts, cannot be doubted. The issue presented on a motion to intervene, consolidate or stay is always, therefore, an aspect of the court's problem of conducting such litigation with a view to obtaining its benefits "with economy of time and effort for itself, for counsel, and for litigants". Landis v. North American Company, supra. If the motion be for a stay the court must consider whether the parties and the subject matter in the action to be stayed are embraced within the action which is to be given right of way; whether the dominant action is being prosecuted with skill, zeal and integrity; whether there is risk of collusion; if the dominant action is in another forum, whether it affords an adequate remedy. In addition I see no reason why a court may not consider the calendar condition in such a forum.

Necessity compels the imposition of some measure of control over the conduct of stockholder's suits for the benefit of large corporations having many thousands of stockholders. Any matter which is relevant to the prudent exercise of such control is relevant to the issue.

■■ In the case at bar all the parties defendant in the Brendle suit are included in the Consolidated Action; some included in the Consolidated Action are omitted in the Brendle suit. The issues in the Consolidated action are broader and more inclusive than those in the Brendle suit and the allegations of the Neumeyer and Seidenberg complaints incorporate the issues of the Brendle suit in the Consolidated Action.

Twelve firms of attorneys are prosecuting the Consolidated Action under the generalship of one of them selected by the state court. No charge of lack of skill or zeal or integrity or the danger of collusion has been made. Certainly, this Court should not, on its own motion, attribute such unprofessional considerations to so many attorneys. That the courts of New York afford an adequate forum for the litigation of such matters, including a liberal system of pre-trial investigation, is attested by the frequency with which minority stockholders select it for derivative suits. The state courts have already done much work in refining and defining the issues of this litigation. The hope suggested by the attorney for Brendle that the Brendle suit would proceed more rapidly to trial than the Consolidated Action is predicated on an assumption that the usual pre-trial motions which were made in the Consolidated Action would be omitted in the Brendle suit. There is nothing in general experience to warrant such an expectation.

There is the additional factor pressed upon the court's attention that the defendants are engaged in a crucial department of the national war-making effort. Normally, I am not much impressed by recourse to patriotic considerations as exculpatory of wrongdoing; but the issue here is not wrongdoing but economy in the prosecution of litigation. I believe that upon that issue the defendants' preoccupation with the war-making effort is properly relevant.

Under the circumstances the stay should be granted pending disposition of the Consolidated Action in the state court, without prejudice, however, to an application to vacate the same should it appear that the issue of miscomputation is eliminated from among the issues therein to be tried or that the Consolidated Action is not being prosecuted in good faith and with reasonable diligence. The order will also provide that plaintiff's attorney shall be notified, before final agreement, of an intention to settle the Consolidated Action and of the proposed terms. The stay shall not prevent plaintiff from effecting service of the summons and complaint on any defendant but the time of the defendants to answer will be extended to 20 days after an order vacating the stay and notice of entry thereof is served on the defendants or their attorneys.

Settle order on five days' notice.