**Abe ROSENFELD, Plaintiff,**

**v.**

**SCHWITZER CORPORATION, William Wallace Corporation, the Dyson-Kissner Corporation, Charles H. Dyson, Franklin H. Kissner, Howard V. Scott, Glenn O. Kidd, James A. McLean and Robert E. Palmer, Defendants.**

United States District Court
S. D. New York.

Feb. 17, 1966.

On Motion for Reargument
March 16, 1966.

Graubard & Moskovitz, New York City, for plaintiff. Philip Kazon, Michael H. Greenberg, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants. James E. Nickerson, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge:

This is a derivative and representative action brought by an alleged stockholder of the nominal defendant Schwitzer Corporation, an Indiana corporation with its principal place of business in that State. Plaintiff, Abe Rosenfeld, is a resident of Indiana. The corporate defendants Dyson-Kissner Corporation (Dyson-Kissner) and its subsidiary William Wallace Corporation (Wallace) are Delaware corporations with their principal places

of business in New York. The individual defendants, all directors and officers of Wallace, are residents of either New York or Connecticut.

Jurisdiction is asserted to rest upon diversity of citizenship, 28 U.S.C. § 1332, and upon § 14 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(b); 28 U.S.C. § 1331.

Defendants have moved (1) for summary judgment on the ground that plaintiff has no standing to maintain the action, and in the alternative (2) for a separate trial on the issue of plaintiff's standing to sue, or (3) for renewal of a stay of the proceedings in this action pending the final determination of a similar stockholders' suit brought by plaintiff's brother in the United States District Court for the Southern District of Indiana. A stay previously granted by Judge Levet on condition has now expired.

The complaint here alleges in substance that as a result of a conspiracy between defendants and the members of the Schwitzer family, controlling shareholders of Schwitzer Corporation, the Schwitzers sold their controlling stock at a substantial premium to Dyson-Kissner; that Dyson-Kissner in turn sold the stock to its subsidiary Wallace; and that thereafter Schwitzer was merged into Wallace at terms highly disadvantageous to Schwitzer minority stockholders. As additional consideration for the sale of control, it is alleged that the Schwitzer family stockholders were to receive generous remuneration and retirement benefits from Schwitzer Corporation and the surviving corporation Wallace, and indemnification against claims of the Schwitzer minority from Dyson-Kissner.

The complaint further alleges that on October 30, 1964, at a special meeting of Schwitzer stockholders the merger was approved; the necessary votes were allegedly procured in part through the illegal acquisition of the controlling shares and in part through false and misleading proxy statements in violation of federal law. The complaint seeks to enjoin the merger and to obtain an accounting from the defendants.

Prior to the commencement of this action a similar representative and derivative suit for substantially the same relief was initiated in the United States District Court for the Southern District of Indiana by plaintiff's brother, David Rosenfeld, and another, also alleged stockholders of Schwitzer Corporation. The Indiana action is directed against the members of the Schwitzer family, trustees for them, and various directors of Schwitzer who are residents of Indiana. On the other hand, the action in the case at bar names the Dyson-Kissner-Wallace group as defendants.

1. *Summary judgment.*

Defendants' motion for summary judgment challenging plaintiff's standing to maintain this action is based on the following facts:

In 1961 plaintiff Abe Rosenfeld purchased 100 shares of Schwitzer Corporation common through the Indiana office of his broker Francis I. DuPont & Co. These shares were never registered in Rosenfeld's name but were held by DuPont in Rosenfeld's margin account, apparently registered in DuPont's name. Rosenfeld was thus the beneficial owner though not the record owner of these shares.

On November 3, 1964, after stockholder approval of the proposed merger between Schwitzer Corporation and Wallace, plaintiff wrote to both Schwitzer and Wallace stating that he objected to the merger and demanding payment for the value of his shares on an appraisal basis pursuant to Indiana statute. The letter stated that it was not to be construed as an election of remedies or as a waiver of any statutory or common law rights of Rosenfeld as a minority stockholder to participate in representative or derivative suits arising out of the merger.

On November 30, 1964, the date the merger became effective, DuPont, as record holder of plaintiff's 100 shares of Schwitzer stock, exchanged such shares

for 250 shares of Wallace pursuant to the merger terms. Thereafter, two cash dividends declared by Wallace were received by DuPont and credited to plaintiff's account. On April 27, 1965, subsequent to the commencement of this action, plaintiff sold 200 of his 250 Wallace shares; he apparently still retains the remaining 50 shares. Plaintiff denies that the exchange of the Schwitzer for Wallace shares or the acceptance of dividends from Wallace was done pursuant to his instructions, and claims that these transactions were merely routine steps taken by his broker in the regular course of business.

On the basis of these facts defendants contend in essence that Rosenfeld is not a "shareholder" of Schwitzer entitled to maintain a derivative or representative suit within the meaning of Rule 23(b), F.R.Civ.P. Defendants urge (1) that Rosenfeld, as a mere equitable owner of stock as distinguished from the registered legal owner, has no right to attack the merger, and (2) that Rosenfeld by conduct subsequent to the merger has participated in its fruits, has therefore acquiesced in the transaction and has lost any rights to object thereto.

Though there is some dispute as to the applicable law determining who is a "shareholder" within the meaning of Rule 23, see 3 Moore, Federal Practice ¶ 23.17, at 3517–18 (1964), in my view the matter of standing to prosecute a derivative or representative action for violation of state law governing corporate affairs "concerns the very nature and quality of [a shareholder's] substantive rights, power and privileges." Hausman v. Buckley, 299 F.2d 696, 701, 93 A.L.R.2d 1340 (2 Cir. 1962). Thus the question properly should be determined by the law of the interested state, that is to say, the state of incorporation.[1] See Gallup v. Caldwell, 120 F.2d 90 (3 Cir. 1941); Steinberg v. Hardy, 90 F.Supp. 167 (D. Conn.1950); Pikor v. Cinerama Prods. Corp., 25 F.R.D. 92 (S.D.N.Y.1960); Milvy v. Adams, 16 F.R.D. 105 (S.D.N.Y.), remanded 217 F.2d 647 (2 Cir. 1954); Bankers Nat'l Corp. v. Barr, 7 F.R.D. 305 (S.D.N.Y.1954); H. F. G. Co. v. Pioneer Pub. Co., 162 F.2d 536 (7 Cir. 1947) (Lindley, D. J., concurring); 3 Moore, supra, at 3519; Fed.R.Civ.P. 17 (b). See generally Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

In the case at bar it follows that Indiana law governs both on the question of (a) whether an equitable owner of stock can pursue a derivative action, see Marco v. Dulles, 177 F.Supp. 533, 551–552 (S.D.N.Y.1959); Steinberg v. Hardy, supra; Milvy v. Adams, supra; and (b) whether plaintiff by his conduct has waived the right to maintain the action,[2] see Richardson v. Blue Grass Mining Co., 29 F.Supp. 658, 659 (E.D.Ky.1939); Pikor v. Cinerama Prods. Corp., supra;

1. Strictly speaking, a court sitting in the Southern District of New York will look to New York law to extrapolate the meaning of a "shareholder" in Rule 23(b), F.R.Civ.P. But for purposes of determining the status of Schwitzer's shareholders the conflicts rule of New York refers to the law of the state of incorporation, namely, Indiana. See Milvy v. Adams, 16 F.R.D. 105 (S.D.N.Y.), remanded, 217 F.2d 647 (2 Cir. 1954); Bankers Nat'l Corp. v. Barr, 7 F.R.D. 305 (S.D.N.Y.1954); Restatement, Conflicts § 183, comment (Tent. Draft No. 7, 1962). But cf. Hirshhorn v. Hirshhorn, 280 App.Div. 791, 112 N.Y.S.2d 841 (2nd Dep't 1952).

2. If the applicable Indiana rules barred plaintiff Rosenfeld from prosecuting his claims arising under the state corporate law, it would be necessary to consider whether § 14 of the Securities Exchange Act of 1934 impliedly prescribes separate federal standards for the status of shareholders seeking to vindicate rights arising under that statute, and, if so, whether those standards are less stringent than the Indiana requirements. However, since I conclude that for the purposes of the present motions the plaintiff is not disabled from maintaining a derivative action under the state law, see pp. 762–63 infra, and any federal rule would be at least as permissive, see J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), cf. Levitt v. Johnson, 334 F. 2d 815 (1 Cir. 1964), Entel v. Guilden, 223 F.Supp. 129 (S.D.N.Y.1963), it is not necessary to decide the question.

cf. West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Pomerantz v. Clark, 101 F.Supp. 341 (D.Mass.1951).

(a)

The parties have not cited and I have been unable to find any Indiana case dealing with the standing of an equitable owner of corporate stock to bring a derivative or representative action. I must therefore predict what the courts of that state would hold in this instance. See Steinberg v. Hardy, 90 F.Supp. 167, 169 (D.Conn.1950).

The overwhelming weight of authority supports the view that an equitable owner of shares need not be a stockholder of record in order to institute and maintain a derivative action. E. g., Gallup v. Caldwell, 120 F.2d 90 (3 Cir. 1941); Andrews v. Precision Apparatus, Inc., 217 F.Supp. 679 (S.D.N.Y.1963); Marco v. Dulles, 177 F.Supp. 533 (S.D.N.Y.1959); Steinberg v. Hardy, supra; Craftsman Finance & Mortgage Co. v. Brown, 64 F. Supp. 168 (S.D.N.Y.1945); Richardson v. Blue Grass Mining Co., 29 F.Supp. 649 (E.D.Ky.1939); Baker & Carey, Corporations 673 (3d ed. 1959). It is said that the "protection of the law would hardly be denied to the owner of the substance, meanwhile being accorded to the holder of the shadow." Hurt v. Cotton States Fertilizer Co., 145 F.2d 293, 295 (5 Cir. 1944).

There is every reason to suppose that the Indiana courts if faced with the problem would follow this view. Thus the plaintiff's standing here cannot successfully be challenged on the ground that he is a mere equitable owner of shares.[3]

(b)

It is generally recognized that a stockholder who has acquiesced or participated in the acts giving rise to his claim has no standing to vindicate the rights of the corporation in a derivative action. See, e. g., Ramsburg v. American Investment Co., 231 F.2d 333, 339–340 (7 Cir. 1956); Liken v. Shaffer, 64 F.Supp. 432 (N.D.Iowa 1946); Pikor v. Cinerama Prods. Corp., 25 F.R.D. 92 (S.D.N.Y. 1960); Frank v. Wilson & Co., 27 Del. Ch. 292, 32 A.2d 277 (1943); Trounstine v. Remington Rand, Inc., 22 Del.Ch. 122, 194 A. 95 (1937); 15 Fletcher, Corporations § 7146 (rev. ed. 1961); 3 Moore, supra, at 3520. This proposition has been accorded cursory recognition in the Indiana case law. E. g., Bradford v. Frankfort, St. Louis & Toledo Rd., 142 Ind. 383, 40 N.E. 741, rehearing denied, 142 Ind. 383, 41 N.E. 819 (1895); Tevis v. Hammersmith, 170 Ind. 286, 84 N.E. 337 (1908); cf. Norton v. Union Traction Co., 183 Ind. 666, 110 N.E. 113 (1915). The rule is designed, among other things, to prevent speculation by the stockholder on the results of corporate transactions, with the object of accepting the advantages if they turn out well or challenging them if they are not beneficial. In other words, it prevents a shareholder from eating his cake and having it too. See Bradford v. Frankfort, St. Louis & Toledo Rd., supra; Trounstine v. Remington Rand, Inc., 22 Del.Ch. 122, 194 A. 95 (1937).

In the case at bar it is not clear whether plaintiff waived his rights to object to the transactions complained of by speculating on the possibility that the merger would in fact be beneficial. See Bradford v. Frankfort, St. Louis & Toledo

3. Defendants rely upon cases applying Delaware law which draw a distinction between transactions arising solely from the operation of the business by management and transactions between a corporation and its shareholders. Schwartz v. The Olympic, Inc., 74 F.Supp. 800 (D.Del. 1947); Salt Dome Oil Corp. v. Schenck, 28 Del.Ch. 433, 41 A.2d 583, 158 A.L.R. 975 (1945); In re Northeastern Water Co., 28 Del.Ch. 139, 38 A.2d 918 (1944). Defendants contend on the basis of this authority that an equitable owner of stock should be permitted to prosecute a derivative action only in the former case and not in the latter. Whatever may be the merit of this distinction in some exceptional circumstances, at this stage of the proceedings in the case at bar I see nothing to indicate that Indiana would adopt such a position.

Rd., supra. Nor is it at all clear that the defendants have been prejudiced or disadvantaged by plaintiff Rosenfeld's behavior. See Richardson v. Blue Grass Mining Co., 29 F.Supp. 649, 665 (E.D. Ky.1939).

Plaintiff objected to the merger in his communication to Schwitzer Corporation and Wallace of November 3, 1964, and attempted to preserve his rights to sue. He claims that the exchange of Schwitzer for Wallace stock and the acceptance of Wallace dividends were matters of routine carried out by his brokers in the ordinary course of business and not pursuant to his instructions. There is some doubt as to whether plaintiff was fully apprised of the terms of the merger at all times here relevant, or, indeed, of the underlying transactions which he now attacks.

There are evidently questions of fact here as to the nature of plaintiff's conduct and intentions. This is a case where "sound judicial administration strongly suggests that a court should not attempt to reconstruct the intent of the parties in a complicated factual situation before they have had an opportunity to present evidence on that issue before the fact-trier." Union Ins. Soc'y v. William Gluckin & Co., 353 F.2d 946 (2 Cir. Dec. 20, 1965). Moreover, the Indiana law applicable to this specific situation is uncertain. Under the circumstances, if the issues are to be determined in this court, the facts should be fully explored at a trial. I conclude that the defendants' motion for summary judgment should be denied.

2. *The motion for a stay.*

The federal courts have wide latitude in granting stays of further proceedings in an action, particularly where there is duplicitous litigation in another federal forum. As stated by Justice Cardozo in Landis v. North American Co., 299 U.S. 248, 254–255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936):

> "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

See also Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); Kansas City Southern Ry. Co. v. United States, 282 U.S. 760, 51 S.Ct. 304, 75 L.Ed. 684 (1931).

Private convenience as well as public policy dictates that litigation of the same issues should, wherever possible, be centered in a single forum. Moreover, increasing calendar congestion in the federal courts makes it imperative to avoid concurrent litigation in more than one forum whenever consistent with the rights of the parties. Weinstein, Revision of Procedure: Some Problems in Class Actions, 9 Buffalo L.Rev. 433, 442–46 (1960).

This is particularly true in stockholders' actions where the potentiality for duplication is great. In Ferguson v. Tabah, 288 F.2d 665, 672 (2 Cir. 1961), the Court of Appeals has recently observed that:

> "because of the unique problems presented by [this type of] litigation * * *—the almost limitless possibility for multiplicity of suits with its resultant disastrous effect on the corporate treasury, there has grown up a judicial trend to stay subsequently initiated derivative actions to await a final decision in an earlier suit, wherein the rights of all parties would be adjudicated."

See also Schiff v. Metzner, 331 F.2d 963, 965 (2 Cir. 1964). Accordingly, many of the cases delineating the circumstances governing the propriety of the granting of a stay have involved stockholder litigation. E. g., Mottolese v. Kaufman, 176 F.2d 301 (2 Cir. 1949); Reiter v. Universal Marion Corp., 173 F.Supp. 13 (D. D.C.1959); Schwartz v. Kaufman, 46 F. Supp. 318 (E.D.N.Y.1940); Brendle v. Smith, 46 F.Supp. 522 (S.D.N.Y.1942); P. Beiersdorf & Co. v. McGohey, 187 F.2d 14 (2 Cir. 1951); cf. Shikler v. Weinstein, 105 F.Supp. 48 (S.D.N.Y.1952); Beard v. New York Central Rd., 20 F.R. D. 607 (N.D.Ohio 1957).

As the cases indicate, the decision as to whether a stay should be granted involves the balancing of a great variety of factors, and ultimately rests within the sound discretion of the trial court. E. g., Landis v. North American Co., supra; Ferguson v. Tabah, supra, 288 F.2d at 672; Brendle v. Smith, supra, 46 F. Supp. at 524–525. Among the relevant factors to be considered, with varying degrees of persuasiveness depending on the circumstances, are whether the rights of the stockholders will be fully protected, see Weiss v. Doyle, 178 F.Supp. 566 (S.D. N.Y.1959); Brendle v. Smith, 46 F.Supp. 522, 526 (S.D.N.Y.1959); the extent to which the controversies involve identical issues and parties, see Kansas City Southern Ry. Co. v. United States, 282 U.S. 760, 763–764, 51 S.Ct. 304, 75 L.Ed. 684 (1931); Lyons v. Westinghouse Elec. Corp., 222 F.2d 184 (2 Cir.), cert. den., 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955); Triangle Conduit & Cable Co. v. National Elec. Prods. Corp., 138 F.2d 46, 48 (3 Cir. 1943), cert. den., 320 U.S. 784, 64 S.Ct. 191, 88 L.Ed. 471 (1943); Culbertson v. Midwest Uranium Co., 132 F. Supp. 678 (D.Utah 1955); the likelihood that one of the actions will reach an earlier conclusion, see Mottolese v. Kaufman, supra; Cresta Blanca Wine Co. v. Eastern Wine Corp., 143 F.2d 1012 (2 Cir. 1944); Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 930 (3 Cir. 1941); see also Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421 (2 Cir. 1965); the relative ease of access to sources of proof, cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); the comparative status of the dockets in the competing forums, see Shikler v. Weinstein, supra; Brendle v. Smith, supra; and the possibility that the case will involve questions of foreign law which another forum might be better equipped to resolve. Cf. Gulf Oil Corp. v. Gilbert, supra.

Judge Levet took these considerations into full account in granting the prior stay of the proceedings in this action pending determination of the suit in Indiana. In my view these considerations are still controlling.

The claims in the case at bar arise out of the same facts and circumstances as those in the Indiana action and the relief sought is almost identical. The action here asserts claims on behalf of the same corporation and the same class of stockholders as does the Indiana action. Most of the acts complained of took place in Indiana. The major questions involved turn on Indiana law and should properly be determined in a federal court sitting in that State. The suit in Indiana should be reached for trial before the action here in New York. Thus the interests of economy of time and effort for the district courts and for counsel and litigants would be served by having the issues determined in Indiana.

It is true that the Indiana action is maintained only against the Schwitzer family and the Schwitzer directors, whereas the defendants in the New York action are the Dyson-Kissner-Wallace group. However, the defendants here have expressed their willingness to appear in the Indiana action so that the claims asserted can be determined—and complete relief rendered—as to all parties in interest. Subsequent to Judge Levet's prior order staying proceedings in the New York action defendant Wallace became a party to the Indiana suit by stipulation. The other New York dedefendants have moved to intervene in the Indiana action. Since counsel has not advised me that that motion has been determined, it is presumably still pending in the Southern District of Indiana.

The considerations which led Judge Levet to stay the proceedings in this action in my judgment are still controlling. Sound judicial administration as well as the interests of all parties concerned dictate that proceedings in the New York action should be stayed pending the final disposition of the action in Indiana.

Defendants' motion for a stay is granted upon the following conditions:

1. Defendants other than Wallace shall renew their consent in writing to

service of process in the Indiana action so that they may be joined as parties.

2. Defendants shall diligently pursue such steps as may be necessary to obtain leave to intervene as parties defendant there.

The granting of the stay makes it unnecessary to pass upon defendants' application for a separate trial on the question of the New York plaintiff's standing to sue.

Settle order on notice.

On Motion for Reargument

Defendants' motion for reargument of my decision of February 7, 1966 denying their motion for summary judgment and granting a stay is granted. On reargument I adhere to my original decision except as to the modifications noted below.

1. *Summary judgment.* The facts relied on by defendants in support of reargument were fully considered by the court in denying their original motion for summary judgment made on the ground that plaintiff had no standing to maintain the action. Denial of summary judgment will stand.

2. *Modification of the stay to permit discovery and further motions directed to the limited issue of plaintiff's right to sue.* There is no doubt in my mind that the sound administration of justice and the overall interest of the parties will be served best by having all issues litigated in the Indiana action. This applies as well to the issue of plaintiff Abe Rosenfeld's right to sue, if a final decision on that question becomes necessary. Abe Rosenfeld is a resident of Indiana. Schwitzer is an Indiana corporation. The questions involved are primarily questions of Indiana law, some of which are novel and difficult. The District Court in Indiana is in a much better position than this court to decide these issues, both as to the basic substantive questions and as to plaintiff's standing to sue.

On reargument plaintiff has offered, perhaps with tongue in cheek, to apply for leave to intervene in the Indiana action on condition that defendants there consent to such intervention and concede plaintiff's standing to sue. In my view that offer is wholly unsatisfactory and does not solve the problem which defendants raise. I see no reason why the defendants here or in Indiana should be asked to waive what may well prove to be a valid defense to Abe Rosenfeld's claim. This is no less true because a related question with respect to the Indiana plaintiffs is now under advisement by the Indiana court.

On the other hand, I see no reason why defendants should be permitted to isolate the issue of Abe Rosenfeld's standing and have it separately resolved here. I am not concerned with the tactical maneuvers of either side.

The defendants' motion to modify the stay to permit discovery and further motions on the limited issue of plaintiff's standing to sue is denied at this time upon the following conditions:

(a) That within 30 days from the date of the order to be entered on this decision plaintiff Abe Rosenfeld moves to intervene in the Indiana action.

(b) That the defendants in this action who are now also defendants in the Indiana action consent to such intervention.

(c) That the Abe Rosenfeld motion to intervene is granted by the Indiana court on consent or otherwise.

If these conditions are not fulfilled the defendants may renew before me their application for a modification of the stay so as to permit discovery and further motions on the issue of plaintiff's standing to sue here.

3. Since the conditions imposed upon the granting of the stay in my original decision have already been satisfied it will be unnecessary to include them in the order to be entered.

Settle order on notice.