# REPORTS OF CASES

### DETERMINED IN

# THE SUPREME COURT

#### OF THE

# STATE OF UTAH.

C. M. JACKSON, Respondent, v. THE CROWN
POINT MINING COMPANY, ET AL., Appellants.

CORPORATION — FILING ARTICLES — SECS. 318, 319, R. S. 1898 —
MANDATORY — FAILURE TO COMPLY WITH SEC. 339, R. S. 1898
— WHEN NOT VITAL. AMENDMENT TO ARTICLES — NOT FUNDA-
MENTAL — EFFECT OF FAILURE TO FILE — ESTOPPEL OF PAR-
TICIPATING STOCKHOLDER. ESTOPPEL IN PARTICULAR CASE.

1. *Corporation — Filing Articles — Secs. 318, 319, R. S. 1898 — Manda-
tory — Failure to Comply with Sec. 339, R. S. 1898 — When Not Vital.*

   While the provision of the statute, Secs. 318, 319, R. S. 1898,
   requiring the filing of the original articles of incorporation
   with the Secretary of State, is mandatory and applies equally
   to any amendment thereof which is fundamental, Sec. 339,
   R. S. 1898, a failure to file an amendment which is not fun-
   damental, such as an increase of the number of its board of
   directors, is not vital and would form no basis for a direct
   proceeding by the State to forfeit the charter of such cor-
   poration.

2. *Amendment to Articles — Not Fundamental — Effect of Failure to
   File — Estoppel of Participating Stockholder.*

Any failure or omission by a corporation to comply with the provisions of a statute which falls short of justifying a direct proceeding by the State to forfeit its charter, is not fundamental, and third parties may, by their acts, be estopped from setting up such failure as a bar to the enforcement of their obligations to the corporation.

3. *Estoppel in Particular Case.*

Respondent having participated in the stockholders' meeting where the number of directors was changed from seven to nine, and after the resolution effecting the change was passed, having voted for nine stockholders, himself among the number, for directors, and after the election of the new officers, having surrendered his stock and had new certificates issued and signed by the president and secretary elected by said board, is estopped from questioning the acts of the board he helped to elect.

(Decided Nov. 20, 1899.)

Petition for rehearing denied Dec. 19, 1899.

Appeal from the Third District Court, Salt Lake County, Hon. Ogden Hiles, *Judge.*

Action by plaintiff for an injunction restraining defendant from selling plaintiff's stock to pay an assessment levied thereon by defendant's board of directors. From a decree perpetually enjoining defendant, defendant appealed. *Reversed.*

*Messrs. Brown & Henderson*, for appellant.

If a corporation is exercising corporate powers and franchises, and there has been some proceedings for incorporation, the stockholders of the corporation and the corporation itself are estopped in any collateral action from denying the validity of the corporation or the acts of its *de facto* officers. The only way it can be questioned is in a direct proceeding by the State. 3 Thompson on

Corp., Secs. 3897, 3898, 3899; 2 Thompson on Corp., Secs. 1852, 1853; 19 Am. Dec. note *de facto* Corps., 67; *Ohio, etc., R. R. Co.* v. *McPherson,* 86 Am. Dec., 128. (35 Mo., 13.)

The acts of a *de facto* board of directors and *de facto* directors are binding on the stockholders, and in an action for calls or assessments against stockholders he can not question their authority. 2 Thompson on Corp., Secs. 1972, 1973; 3 Thompson on Corp., Secs. 3893–3899; 1 Cook on Stockholders, Secs. 183, 184, 185; *Swortout* v. *Railway Co.,* 24 Mich., 389; *Bradford* v. *R. R. Co.,* 40 N. E., 741. (Ind.)

The whole principle of estoppel applies to the organization of the corporation itself. If it is claimed on the part of its stockholders that the organization itself is improper because an authenticated copy of the amendment was not taken from the county clerk and filed with the Secretary of State, it was as much his duty as anybody's to see that the law was complied with. If there has been an honest attempt to incorporate a company in good faith, and they have acted as a corporation, it is a corporation *de facto.* 19 Am. Dec., 67, note *de facto* Corporations; *Elizabeth City Academy* v. *Lindsay,* 45 Am. Dec., 500.

The filing of the final certificate with the Secretary of State is not necessary to create a corporation, and if the corporation has otherwise fulfilled its requirements, nobody but the State can question the want of filing the final duplicate certificate with the Secretary of State. *Mokelumme M. Co.* v. *Woodburry,* 14 Cal., 424; *Bushnell* v. *Ice Co.,* 138 Ill., 67; *Bradford* v. *R. R. Co.,* 40 N. E., 741; *Curtis* v. *Meeker,* 62 Ill. App.; 49.

In this case the plaintiff himself was present at the stockholders' meeting and voted for the nine members of the board of directors. He participated in those proceed-

ings and is estopped. *Fair Association* v. *Walker*, 83 Mich., 386.

*Messrs. Dey & Street*, for respondent.

Plaintiff contends that in order to make a valid assessment whereby fully paid stock of a corporation may be sold and forfeited if the assessment be not paid, the corporation must act through a lawfully constituted board of directors, and if the board of directors attempting to act is not constituted as required by the articles of incorporation (or the directors are not legally qualified to act), then any shareholder whose fully paid stock is sought to be forfeited through a delinquent sale can enjoin the sale and have the proceedings declared null and void.

The assessment of fully paid stock is anomalous and purely statutory. 7 Thompson on Corporations, Sec. 8662.

The distinguished author of Thompson on Corporations in his very recent supplementary volume says:

"Properly speaking, an assessment is an act or resolution of the board of directors of a corporation determining that a certain percentage of the unpaid capital stock owned by the shareholders should be called in. A call is a notice given to the shareholders of the fact of the assessment, a call upon them to respond to it. Nevertheless these two words, although really meaning different things, are constantly confused in legal treatises and judicial opinions." 7 Thompson on Corporations, Sec. 8658.

It is very clear that a holder of fully paid stock has a property right therein superior to the holder of stock not fully paid, and yet the rule of law is that even the holder of stock not fully paid, whenever a forfeiture is attempted, can invoke the aid of a court of equity to enjoin the proceedings unless the proceedings are taken by a valid board

of directors. 4 Thompson on Corporations, Sec. 4524; *Moses* v. *Tompkins*, 84 Ala., 613; *People's M. Ins. Co.* v. *Westcott*, 14 Gray, 440; *Garden Gully, etc.,* v. *McLister*, 1 Appeal Cases, 39; see *Chandler* v. *Sheep Rock Mining and Milling Co.*, 15 Utah, 434, 435.

It is apparent that the Utah statute relating to assessments upon fully paid stock, and giving the right of sale of all the stock assessed, if necessary, is strictly a statute of forfeiture, and presents even more reason for requiring all proceedings to be *strictissimi juris* than in cases where a subscriber has not paid all of his subscription. *Morris* v. *Metalline Land Co.*, 164 Pa., 326; *Westcott* v. *Minn. Mining Co.*, 23 Mich., 145; *Mitchell* v. *Vermont Copper Co.*, 8 Jones & S., 406; *Portland & S. & P. R. Co.* v. *Graham*, 11 Met., 1.

In order to make an assessment upon fully paid stock valid in Utah it is necessary that it be levied by the board of directors of the corporation. Rev. Stat., Utah, Secs. 354, 355.

"A corporation can be created by or under legislative enactment, and by that alone." 1 Cook on Corporations (4th ed.), Secs. 1 and 2; Dartmouth College Case, 4 Wheat., 636; 1 Thompson on Corp., Sec. 216; 7 Am. and Eng. Ency. Law (2d ed.), p. 669.

The Utah statute applicable to amendments and to the question under discussion is contained in Sections 338, 339, 318, and 319 of the Revised Statutes of Utah.

It is clearly apparent that under Section 319 the original charter does not become a contract between the incorporators and the State, nor does the association become a body corporate, *de jure*, until the copy of the articles of agreement and oath or affirmation have been filed in the office of the Secretary of State, and it is equally clear that an amendment does not become operative as a part of the

charter, and does not receive the consent of the State to the modification of the original charter embodied in the amendment until the same formality has been complied with. *Indianapolis, etc., Mining Co.* v. *Herkimer*, 46 Ind., 142; *Granby Mining Co.* v. *Richards*, 95 Mo., 106; *Cresswell* v. *Oberly*, 17 Bradwell (Ill.), 281; *Hurt* v. *Salsbury*, 55 Mo., 311; *Martin* v. *Deetz*, 102 Cal., 62.

" In an injunction suit brought by a stockholder to prevent the corporate officers from forfeiting stock, the court will pass upon the legality of an election of directors, but of course will not and can not remove them." *Moser* v. *Tompkins*, 84 Ala., 613; *Garden, etc., Co.,* v. *McLister*, L. R. 8 App. Cases, 39.

Appellant claims an estoppel against defendant.

" Waiver is the intentional relinquishment of a known right." 28 Am. and Eng. Ency. Law, p. 526.

" No man can be bound by a waiver of his rights unless it is made distinctly, and with full knowledge of the rights which he intends to waive. Those acts ordinarily amounting to a waiver of forfeiture will not have that effect in the absence of knowledge of forfeiture." 28 Ency. Law, p. 527.

Mere silence on the part of the plaintiff does not amount to a waiver of the performance of the conditions unless indeed where such silence is inconsistent with any other explanation. *Burlington R. Co.* v. *Bostler*, 15 Iowa, 159; *Texas, etc., R. Co.* v. *Rust*, 19 Fed., 239; *Hamlin* v. *Sears*, 62 N. Y., 327.

BASKIN, J.

The appeal in this case is from the final decree of the trial court, by which the appellant is perpetually enjoined from selling the respondent's stock to pay an assessment levied thereon by the appellants' alleged board of directors.

It is an undisputed fact, as found by the court below, that the said Crown Point Mining Company way duly incorporated on the 16th day of October, 1895, and is now and was at all times since said date a corporation organized and existing under the laws of the State of Utah.

It also appears from the evidence that on the 25th day of May, 1898, a meeting of the stockholders of said company was held in pursuance of a notice thereof duly given; that the notice of said meeting specified that it was called for the purpose, among other things, of amending the articles of incorporation by increasing the number of directors from seven to nine, and of electing a board of directors in conformity therewith; that at said meeting the stockholders passed a resolution by which they resolved that the number of directors of said company, from the 25th day of May, 1898, should consist of nine stockholders, and thereupon proceeded to elect, by ballot, nine stockholders as directors; that the respondent who was a stockholder, attended said meeting, and that while the testimony is conflicting as to whether he voted for said resolution, it does not appear that he voted against the same or made any objection thereto. In testifying in his own behalf, he admitted that he voted for nine directors, and that the ballot which he cast contained all the names of the nine directors chosen, except that of Pat Ryan, whose named he erased from said ballot and inserted his own instead. At said meeting, three hundred and forty-three thousand shares were represented, among which were one thousand shares, of the five hundred thousand shares, which constituted the capital stock of the company, represented and owned by the respondent. The nine directors chosen, on the 2d day of July, 1898, filed their bonds and oaths of office, and entered upon the duties of directors, and the business of the company has been transacted

by them since that date.  Pat Ryan, one of the nine directors, was chosen by the board as president, and E. V. Duncan was chosen as secretary.  The shares of respondent's stock, the sale of which was enjoined, were represented by certificates Nos. 146, 147, 148, signed by P. Ryan, president, and E. V. Duncan, secretary, and dated Aug. 10, 1898, and on said day were delivered to respondent. At the time of such delivery respondent returned the certificates of the former owners of said stock, from whom he had acquired the same, and accepted in lieu thereof the foregoing numbered certificates.  Previous to that date, to wit : On the 23d day of July, 1898, at a meeting of said board of directors, at Chicago, Ill., an assessment of three cents per share upon the capital stock of said company, by a resolution of the board, was levied, payable on the 12th day of September, at the banking house of W. S. Mc Cornick & Co., Salt Lake City, Utah, and in said resolution it was stated that said stock should become delinquent for non-payment on that day and be advertised for sale at public auction, unless paid before the 12th day of October, 1898.

Upon the failure of the respondent to pay the assessment on his said stock, a notice of the sale of the same, signed by E. V. Duncan, as secretary, was advertised in pursuance of said resolution, but before the date named in said notice, for said sale, the sale was enjoined.

Sec. 354, Rev. Stat. 1898, provides that " the full-paid capital stock of any corporation organized since March eighth, eighteen hundred and ninety-four, or that may hereafter be organized under the laws of this State, shall not be assessable for any purpose whatever, except to such extent and in such manner as may be expressly provided in the articles of incorporation; *provided*, that if such stock is made assessable and the manner of levying

the assessment is not provided for, it shall be levied in the manner and form hereinafter prescribed.''

Sec. 8, of the articles of association of said company, provides "that the amount of the capital stock of this corporation shall be one million dollars, divided into five hundred thousand shares of the par value of two dollars each, all of which stock is fully paid up and shall be assessable.''

Sec. 5 provides "that the board of directors shall consist of seven directors.''

The amendment of Section 5, which changed the number of the directors from seven to nine, was filed in the office of the county clerk as required by Sec. 339, Rev. Stat., on the 25th day of May, 1898, but was not, as required by said section, filed with the Secretary of State until after the institution of this action; to wit, on the 8th day of October, 1898.

The foregoing facts are included in the findings of fact made by the trial court, except those which relate to the participation of respondent in the meeting of the stockholders on May 25, 1898, and his acceptance of the certificate signed by P. Ryan, president, and E. V. Duncan, secretary, and in regard to which there is no substantial conflict in the evidence.

In the ninth finding of fact the court found that the plaintiff (who is the respondent) at no time waived in any manner whatsoever the filing of said pretended amendment, in the office of the Secretary of State, and as conclusions of law found that the board of directors which levied said assessment was not a lawful board of directors of said company; that said pretended amendment did not become a part of the articles of incorporation of said company; that the said E. V. Duncan was not the lawful secretary of said company, and had no right or authority

to act as such, with respect to said assessment or any proceedings had thereunder, and that said assessment, and all proceedings thereunder, were void.

One of the specific exceptions taken by appellant to the ninth finding, the conclusions of law and the decree, is, that the evidence shows that the respondent is estopped from objecting to the validity of said assessment, on the ground that the board of directors, which he assisted in electing, and which levied said assessment, was not a valid one, on account of the failure to file the amendment of the articles in the office of the Secretary of State until after said assessment was made.

As found by the trial court, at the time said amendment was made by the stockholders, said company was, and had been since the 16th day of October, 1895, a corporation. As such corporation it had the authority to increase or diminish the number of its board of directors, within the limit contained in the *proviso* of subdivision 9, Sec. 315 of the Rev. Stat., which is as follows; to wit: "In no case shall the number of directors be less than three nor more than twenty-five."

The amendment increasing the number of the directors from seven to nine did not alter the character of the corporation, or in the least add to or diminish the scope of its powers, and the increase being within the limits of said *proviso*, was not violative of any state policy, and is not, therefore, fundamental.

In the case of *Mower* v. *Staples*, 32 Minn., 286, the court said: "Alterations which materially change the nature and purposes of the corporation, or of the enterprise for the prosecution of which it was created, are fundamental, while those which work no such material change are not fundamental. * * * The alteration proposed in the present case, by increasing the number

of directors from five to nine, is clearly not fundamental, within the definition above given and sanctioned by the authorities cited. It in no way changes the nature or purpose of the boom company, or of the enterprise for which it was created. It is a change respecting *modus operandi* merely; a change, not of the nature or purpose or character of the company, or of the company's enterprise, but a change of the instrumentalities and agency — the machinery — by which that purpose is to be effected and that enterprise carried on.''

Many cases hold that the requirements in corporation statutes which are not fundamental are merely directory.

In the case of *Mead* v. *Keeler*, 24 Barb. (N. Y.), 24, the statute required the certificate of incorporation to contain the number of trustees and their names, and who should manage the concerns of the company for the first year. This the certificate failed to do, and the defendant resisted his liability as a stockholder on that ground. Mr. Justice Wells, in the opinion, said: '' I think their corporate character may be legally upheld by treating the provisions of the act, which is the foundation of the objection, not as fundamental, but as directory.''

In the case of *Stone* v. *The Great Western Oil Company*, 41 Ill., 85, the defendant resisted the payment of the amount of a call made on the capital stock of the company on the ground that the duplicate of the writing by which the association was constituted was not filed, as required by statute, in the office of the Secretary of State, but the court held, and quoted numerous cases in support of the ruling, that the omission to file such duplicate writing did not exempt the defendant from liability to pay said calls, and that the requirement of the statute was directory only.

The same doctrine is held by the following cases:

*Cross* v. *Pinckneyville Co.*, 17 Ill., 54; *Baker, et al.,* v. *Adm'r of Backus,* 32 Ill., 79; *S. Valley W. W.* v. *San Francisco,* 22 Cal., 440; *Mokelumne Hill Min. Co.* v *Woodbury,* 14 Cal., 425; *Humphreys, et al.,* v. *Mooney,* 5 Colo., 283, 295; *Buffalo & Albany R. R. Co.* v. *Cary,* 26 N. Y., 75.

The provision of the statute requiring the filing of the original articles of the company is mandatory, because the character of the corporation and its powers were fixed by and depend upon the terms of said articles, and their filing and the issuance thereon of a certificate of incorporation by the Secretary of State, were indispensable steps in the formation of the corporation.

Any amendment which changes the character of the corporation, increases its powers, or is fundamental in other respects, must be likewise filed as required by statute, but we fail to perceive any reason why the failure to file an amendment which is not fundamental, which in no way changes the character of the corporation or the scope of its power, but simply increases the number of the agents, who shall act as directors in carrying out the objects of its creation, should invalidate the acts of such agents, which are within the scope of the corporate powers of the company, especially as to the stockholders who may have participated in the meeting at which such amendment was made, without objecting to the same, and who voted to increase the number of the directors. The failure to file said amendment, and the action of the company in pursuance thereof, certainly are not grounds upon which a direct proceeding by the State, to forfeit the charter of the company, could be maintained. Any failure of a corporation which falls short of justifying such proceedings on the part of the State is not fundamental,

and third parties may, by their acts, be estopped form setting up such failure as a bar to the enforcement of their obligations to the corporations.

In the case of *Bradford* v. *Frankford St. L. & T. R. Co.*, 40 N. E., 741 (Ind.), at an annual meeting of the stockholders of said railroad company, the number of the directors was changed from 13 to 5. Bradford, in his complaint, alleged, as a ground for setting aside a consolidation of the defendant company with another company, that the reduction of the number of said directors from 13 to 5 was illegal and void. The answer to the complaint alleged, among other things, the presence and active participancy in said annual meeting, of plaintiff, and that he voted to change the number of directors, and voted for the five who were elected. A demurrer was interposed to the complaint, which was overruled. The appellate court, in an opinion sustaining the lower court, said:

"Leaving out of view the rights of stockholders not present at the 21st of February meeting, and offering no intimation as to their rights, or as to the existence of an estoppel against them, we can not avoid the conclusion that equity will not permit those who participated in the acts complained of to stand by, taking the chances of good or ill fortune from their acts, and then, when such acts have proven fruitless, to complain that such acts were irregular, or even fraudulent, and to seek relief therefrom."

In the Matter of the Application of S. C. & N. Y. R. R. Co., 91 N. Y., 1–5, the application to set aside an illegal election of a board of directors was denied, and one of the grounds stated in the opinion was that "the com-

plaint should be entertained only when made by some aggrieved party who is not himself the author of the wrong complained of.''

The respondent attended the meeting of the stockholders of May 23, 1898, in pursuance of a notice which stated that the object of said meeting was to amend the articles of the company, by increasing the number of directors from 7 to 9, and electing a board of directors in conformity therewith, yet he made no objection to the amendment, and cast his vote for the election of nine of the stockholders, including himself, as directors, and all of these persons, excepting himself, were unanimously chosen. By this action the respondent and the other stockholders tacitly agreed that said board should, as their representatives, transact the business of the company, and that their acts as such board, within the scope of the authority of the corporation, should not only be binding upon the stockholders, but also upon the company in its dealings with the public.

It is not claimed that said assessment was unnecessary, or that it was not made in good faith and to subserve the best interests of the company. From aught that appears from the record, it may have been made to pay creditors or meet some pressing emergency. Whatever may have been the purpose, in the absence of any showing or claim by respondent, to the contrary, we must presume that it was for a legitimate purpose and to subserve the interests of the company. The respondent is clearly entitled to any of the benefits which may accrue to the stockholders, under the management of the directors elected at said meeting, and in view of his tacit agreement in the premises he can not in good conscience be permitted to shirk his obligations as a stockholder, on the ground of the

invalidity of the board of directors which he assisted in electing.

In none of the cases cited by counsel for the respondent, upon this question, does it appear that the party attacking the validity of the board had participated in the election or done any act in recognition of the validity thereof, and in none of these cases was the question of estoppel referred to, except in the case of *Moses* v. *Thompson*, 84 Ala., 620, where it was incidentally mentioned in the following connection and language; to wit: " We are cognizant that some courts of the highest authority have held that the power of persons to act in behalf of the corporation, who have become directors *de facto*, can not be collaterally questioned by a stockholder, without a judgment of ouster against them in a direct proceeding for that purpose. An analysis of the cases would show, we think, that in a majority of them the election was not illegal and void, but irregular and voidable, because of ineligibility, or other cause, or if originally illegal, that the shareholder assailing its validity had affirmatively acquiesced in their acts as directors."

In the case at bar, the respondent not only voted for the directors, but also acknowledged their rightful authority by returning the certificates of the stock transferred to him by former owners, and accepting in lieu thereof other certificates signed by the president and secretary elected by said board. So that the case of *Moses* v. *Thompson*, *supra*, instead of supporting the contention of the respondent, that the amendment is void on account of the failure to file said amendment, is a recognition of the principle of estoppel applied by us in this case.

It is not necessary to decide the other points raised by counsel.

It is ordered that the decree granting the perpetual injunction be set aside, and that the case be remanded with directions to the court below to render judgment in favor of the defendant, for its costs.

BARTCH, C. J., and MINER, J., concur.