485 P.2d 667

John R. CHATTERLEY et al., Plaintiffs, Respondents and Cross-Appellants,

v.

OMNICO, INC., and Interface Computer, Inc., Defendants, Appellant and Cross-Respondent.

No. 12122.

Supreme Court of Utah.

May 17, 1971.

Homer F. Wilkinson, Gary A. Weston, of Bettilyon & Howard, Salt Lake City, for appellants.

Del B. Rowe, Salt Lake City, for respondents.

CROCKETT, Justice:

John Chatterley and eleven others obtained judgment against Interface Comput-er, Inc., which operated its business in Salt Lake City, and its parent corporation, Omnico, Inc., a Washington State based holding company, for unpaid wages, severance pay and other benefits. The basic issue in this lawsuit is whether the parent corporation Omnico, which now appeals and attacks the judgment against it, can be held for those obligations. Upon a trial of the issues the court found in favor of the plaintiffs and against Omnico: that Interface did not have a valid board of directors and officers, that its affairs were actually operated by Omnico. Accordingly, the court "pierced" the corporate veil of Interface and rendered judgment against defendant Omnico to the extent of $13,941 of the claims of the plaintiffs.

Interface Computer, Inc., was incorporated in Utah in December of 1968 by F. McKay Smith and two others for purposes centered around rendering computer services. The articles set up a board of four directors. In April 1969 Mr. Smith, the principal stockholder, sold 80 per cent, or 480,000 shares, of the Interface stock to defendant Omnico. On April 28 the Omnico board of directors, and Smith representing the other outstanding Interface shares, met in a shareholders' meeting. They voted to increase the number of directors of Interface from four to seven, elected Eddie M. Peterson, who was chairman of the Omnico board and of the boards of each of several Omnico subsidiaries, as chairman

of the Interface board; and elected Mc-Kay Smith as president and executive officer of Interface.

In the fall of that year, September and October of 1969, Interface was failing to meet its payroll to the plaintiffs. On October 17 they met and formulated certain demands, including that they were looking to Omnico for payment, which were mailed to the executive officers of both Interface and Omnico. No response was received from either. All of the plaintiffs were terminated either before or by a letter dated October 29, 1969, from Mack Call, then temporary president of Omnico and a member of the Interface and Omnico boards. Most of them were on "blue slip"[1] basis; and after proper demand their wages remained unpaid.

In attacking the fixing of responsibility on it, Omnico first urges error in the determination that Interface did not have a valid board of directors nor validly elected officers. These conclusions were grounded on two findings: (1) That the amendment made in the April 28 meeting to the Interface articles was never filed with the Secretary of State as required by statute; and (2) That the new Interface board of directors never met as such, but that its functions were performed by the Omnico board of directors. We have no disagreement

with Omnico's argument, based on Jackson v. Crown Point Mining Company[2] that the mere failure to file an amendment changing the number of directors on an otherwise properly constituted and functioning board is not sufficient grounds to invalidate the board or the action it takes. In attempting to apply the ruling of that case here Omnico fails to take into account the second aspect of the two findings just quoted above. In the Jackson case, the board met regularly and conducted the business of the corporation. This is in contrast to what occurred in this case, as will appear below.

Defendant essays the position that the meetings of the Omnico board consisting of 15 members, six members of whom were members of the seven-man Interface board, should also be considered as meetings of the latter board. On the other hand, plaintiffs point out certain aspects of those meetings in justification of the trial court's conclusion that it was the Omnico board which was responsible for the operation of the Interface business, and that any distinction between Omnico board and Interface was consistently disregarded: In such meetings there was never the formality usually observed of adjourning the meeting of the Omnico board and convening one of the Interface board. Although only the

1. "Blue slip" is the informal name given the involuntary separation report required for eligibility for unemployment compensation under the Employment Security Act, Title 35, Chap. 4, U.C.A.1953.

2. 21 Utah 1, 59 P. 238.

six-man Executive Committee of the Omnico board where members of the Interface board, whenever Interface business was taken up, the entire 15-man Omnico board considered and voted on it.

There are a number of examples of actions by the Omnico board on Interface business, including employees' reassignment, termination of duties, and a resolution that its executive officer should "forthwith effectuate a 20 per cent reduction of Interface's salary overhead." It is of further interest that at the only meeting actually called as a combined meeting entitled as: "A special meeting of the board of directors of Omnico, Inc., and a meeting of the shareholders and board of Omnico's five subsidiaries above named," no Interface business was touched upon. At this and other meetings, McKay Smith was not listed as either present or absent, as were all of the directors of Omnico. If they had been in fact meetings of the Interface board on which Mr. Smith was a director, his presence or absence should have been shown.

Defendant's urgence that the trial court must have been so "confused" by these combined meetings and the minutes thereof that he was impelled to the wrong result is not convincing. We note here that the dis-

putation between the parties as to whether Interface actually had a valid board of directors and validly elected officers is not alone of critical importance. What has been said about it has a bearing upon the more important and controlling aspect of this case in accordance with the views adopted by the trial court, to which the minutes tend to give corroboration and support: that it was Omnico and its board of directors who were actually operating the business of Interface.

In another facet of Omnico's attempt to upset the trial court's determination that Interface was merely its instrumentality, it points out that neither ownership of a majority of stock, nor the fact that the same persons were officers and directors in the parent (Omnico) and the subsidiary (Interface) would make the former liable for the obligations of the latter.[3] With this we have no disagreement, and we realize that these are common business practices. Nor do we have any difference with Omnico's further averment that: "* * * the corporate entity is only ignored when the ends of justice require it. Some element of unfairness, something akin to fraud or deception, must be present in order to disregard the corporate fiction."[4] It is so apparent as to hardly require stating that the corpo-

3. Steven v. Roscoe Turner Aeronautical Corp., 7 Cir., 324 F.2d 157; American Trading and Production Corp. v. Fischback & Moore, Inc., D.C., 311 F.Supp. 412.

4. American Trading and Prod. Corp., footnote 3 above, at 416.

rate veil should not be so pierced except where considerations of justice so require.

■ In this situation the consideration of justice which so requires is simply that a controlling corporation, such as Omnico, should not be permitted to manage and operate a business from which it stands to gain whatever profit may be made, have the advantage of the efforts of those who serve it, and then use the nomenclature of another corporation as a facade to insulate it from responsibility for paying for such services. We appreciate that this is of course the point of sharp disagreement and dispute in this case. It seems to be another of the constantly recurring situations where the parties, with an eye single to the rightness of their own contentions, each select and place emphasis on those aspects of the evidence which tend to support their own point of view. Inasmuch as it is a matter upon which reasonable minds might differ, the traditional rule of review applies and is dispositive of the issue here: that it is the prerogative of the trial court to find the facts; that in reviewing the record we assume that he believed and regarded as important and persuasive, those aspects of the evidence and the reasonable inferences fairly deducible therefrom which support the findings and judgment.[5]

■ Defendant's last point is that the trial court erred in awarding benefits to which the plaintiffs were not entitled, and payment for time not actually worked. This apparently included some time that some of them used to look for and be interviewed for other employment. No one doubts that "an employee is bound to exercise faithful, loyal and honest service to his employer."[6] There is indication that whatever irregularities there were occurred with the consent of their immediate superior. In circumstances where wages were long past due, there is no basis for any such imputation of disloyalty to their employer as to warrant a reduction in the wages as found due by the trial court.

■ Plaintiffs have taken a cross-appeal, seeking to augment the judgment by claimed penalty wages under Sec. 34–28–5(1), U.C.A.1953; (1969 P.Supp.):

*Separation from payroll*—* * * (1) Whenever an employer separates an employee from his payroll, the unpaid wages of such employee shall become due immediately, and the employer shall pay such wages to the employee within 24 hours of the time of separation * * *.

In case of failure to pay wages due an employee within 24 hours of a demand therefor, the wages of such employee

5. See Huber v. Deep Creek Irr. Co., 6 Utah 2d 15, 305 P.2d 478; Bramel v. Utah State Road Comm., 24 Utah 2d 50, 465 P.2d 534.

6. Chiodo v. General Waterworks Corp., 17 Utah 2d 425, 413 P.2d 891.

shall continue from the date of separation until paid, but in no event to exceed sixty days, * * *. The employee may recover * * * in a civil action.

It is apparent that this statute is intended to impose sanctions where there is a wilful failure of an employer to pay wages. Inasmuch as there appears to have been a bona fide dispute as to whether Omnico was responsible for payment, the trial court was not obliged to make such further award against it.

The judgment is affirmed. The parties to bear their own costs on appeal.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.