**Atlas Stock Transfer Corporation, Plaintiff,**

v.

**SEED PRODUCTS INTERNATIONAL, INC., and Johnson–Bowles and Company, Inc. Defendants and Appellant,**

v.

**Sharon OWEN, Defendant and Respondent.**

**No. 880247–CA.**

Court of Appeals of Utah.

Jan. 27, 1989.

Elwood P. Powell, Salt Lake City, for defendants and appellant.

Edward T. Wells, Salt Lake City, for defendant and respondent.

Before BENCH, GARFF and ORME, JJ.

BENCH, Judge:

Defendant Seed Products International, Inc. ("Seed Products") seeks to modify a judgment entered for defendant Sharon Owen in an interpleader action. The sole issue on appeal is whether stock Owen received from Seed Product's predecessor is subject to a 20 to 1 reverse split. We conclude that it is not, and affirm the judgment.

On June 18, 1984, the shareholders of In-Tec International (U.S.A.), Inc. ("In-Tec"), a Utah corporation, approved a 20 to 1 reverse split of In-Tec's issued and outstanding shares. For reasons unknown, articles of amendment reflecting this change were not filed by In-Tec with the state as required by Utah Code Ann. § 16–10–58 (1987) until December 21, 1984.

After the June shareholders' vote, but prior to the December filing, In-Tec's board of directors approved the issuance of 20,000 shares of In-Tec stock to Owen. The stock was issued as compensation for accounting services Owen had rendered to In-Tec's predecessor. Atlas Stock Transfer Corporation ("Atlas"), In-Tec's transfer agent, was advised of the reverse split shortly after the June shareholders' vote and noted the change on its books and records. Atlas believed that all In-Tec stock certificates issued thereafter, including those to Owen, reflected the reverse split.

Approximately two years later, Owen presented the 20,000 shares to Atlas for transfer into the trading account of Johnson-Bowles and Company, Inc. ("Johnson-Bowles"), a local broker-dealer. Owen requested this transfer in order to facilitate a public sale of the stock. When In-Tec was notified of the proposed transfer, it questioned Owen's rightful ownership. Atlas subsequently filed this interpleader action to determine the ownership of those shares. Owen, In-Tec, and Johnson-Bowles were all named as defendants.

Johnson-Bowles was dismissed from the action after stipulating that it claimed no interest in the stock. Following a one-day bench trial, the court determined that Owen was the legal owner of 20,000 shares of post-split In-Tec stock and was entitled to immediate possession of the certificates. In-Tec appealed the judgment. Subsequently, In-Tec became Seed Products International, Inc., and Seed Products was permitted to substitute for In-Tec on appeal. Seed Products now claims error, not on the court's determination of ownership, but whether Owen's 20,000 shares should be converted to 1,000 shares on the basis of the reverse split.

Seed Products argues that statutory law is dispositive of the issue on appeal. Seed Products cites Utah Code Ann. § 16–10–59 (1987), which provides in pertinent part:

Upon the issuance of the certificate of amendment by the Division of Corporations and Commercial Code, the amendment shall become effective and the arti-

cles of incorporation shall be deemed to be amended accordingly.

The record establishes that Owen's stock was issued to her in August 1984. Although the In–Tec shareholders approved the stock split on June 18, 1984, a certificate of amendment reflecting the split was not issued until December 21, 1984, the date In–Tec filed its articles of amendment. Seed Products argues that section 16–10–59 conclusively establishes the effective date of In–Tec's reverse stock split to be the date of certificate issuance. Thus, Seed Products claims, any In–Tec stock issued prior to that date, including Owen's, is pre-split stock. Owen, on the other hand, argues that a corporation should not be permitted to profit from its own lack of diligence in filing statutorily required amendments.

Although both parties cite other precedent from within and without this jurisdiction, we find controlling the cases of *Chatterley v. Omnico, Inc.*, 26 Utah 2d 88, 485 P.2d 667 (1971), and *Jackson v. Crown Point Mining Co.*, 21 Utah 1, 59 P. 238 (1899). In *Chatterley*, the shareholders of a Utah corporation voted to amend the articles of incorporation to increase the number of directors from four to seven. This amendment was never filed with the Secretary of State as required by statute.[1] Later, suit was filed by a dozen former employees of the company for unpaid wages. Because the amendment had never been filed, the trial court found that the company did not have a valid board of directors, and permitted plaintiffs to pierce the corporate veil. On appeal, the Utah Supreme Court affirmed the judgment, but agreed with defendant's argument that "the mere failure to file an amendment changing the number of directors on an otherwise properly constituted and functioning board is not sufficient grounds to invalidate the board or the action it takes." *Chatterley*, 485 P.2d at 669.

In so stating, the supreme court relied on *Jackson*, which held that a similar filing requirement for corporate amendments pertained merely to fundamental corporate changes, i.e., those that alter the character of a corporation, add or diminish the scope of its powers, or violate state policy. 59 P. at 239. All other corporate requirements not working such a material change could be considered merely "directory." *Id.*

Similarly, we conclude that In–Tec's failure to timely file an amendment reflecting the reverse split is not sufficient to render the split ineffective until the date of filing. As in *Chatterley* and *Jackson*, the amendment did not fundamentally alter the character of the corporation or enhance or diminish the scope of its powers. Nor was it violative of some state policy. The amendment merely reduced the total shares of outstanding stock; the proportionate interests of In–Tec's shareholders remained undisturbed. Under these facts, the amendment was effective on June 18, 1984, the day In–Tec's shareholders approved the stock split.

We do not believe that the purpose of the filing statute is to permit a corporation to protect itself from its own lack of diligence. Rather, *Chatterley* and *Jackson* suggest that the statute is intended to permit some degree of reliance by shareholders and third parties on the pronouncements and undertakings of corporations. In the exceptional situation where, as here, the corporation fails to promptly carry out its statutory duty, the statute should be interpreted consistently with that intention. Equity demands that those who rely upon the corporation's representations be given the benefit of their reliance.

We hold, therefore, that Owen was issued 20,000 shares of post-split In–Tec stock. The judgment of the trial court is affirmed.

GARFF and ORME, JJ., concur.

---

1. The current statute, Utah Code Ann. § 16–10–59 (1987), still requires such filings, but they are now to be delivered to the Division of Corporations and Commercial Code.