In Re:  9.6 Shares of Stock of Shelburne Supermarket, Inc., No. 1172-04
CnC  (Norton, J., May 25, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been
reformatted from the original. The accuracy of the text and the
accompanying data included in the Vermont trial court opinion database is
not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                             Docket No. 1172-04 CnC


IN RE 9.6 SHARES OF STOCK OF
SHELBURNE SUPERMARKET, INC.


ENTRY


        This case is the latest in a series of corporate disputes that have
arisen over the organization and control of Shelburne Supermarket.  It
arises from the Supermarket's consolidation of stock shares and forced
buyout of fractional shares.  Defendants, all shareholders whose shares
would become fractional after consolidation, contend: 1) that they properly
asserted their dissenter's rights under Chapter 13 of the Vermont Business
Corporation Act; 2) that even if they didn't, the corporation improperly
proceeded with its consolidation plan without first amending the articles of
incorporation; and 3) that the corporation undervalued their shares for
buyout.  With the exception of this final question of valuation, the parties

have motioned for summary judgment on all issues.

As a preliminary matter, shareholders seek to block, through collateral estoppel, the corporation's claim that several of the shareholders improperly asserted their dissenter's rights. This is an important issue to the shareholders claims of undervaluation because a dissenting shareholder cannot contest a valuation unless she properly gives written notice prior to a shareholder's meeting that she intends to demand payment for her shares. 11A V.S.A. § 13.21(a)(1). To this argument, shareholders make much of the corporation's answer to a parallel suit filed by shareholders. In that answer the corporation "Admitted that Plaintiffs [defendant shareholders in this case] have dissented timely to Supermarket's valuation of its shares." Clayton v. Shelburne Supermarket, Verified Answer, at ¶ 35, No. S0876-04 CnC (Aug. 31, 2004). They argue that this admission bars the corporation from now denying this admission, and therefore, it cannot deny the shareholders's right to challenge the corporation's valuation.[1]

This argument has two flaws. First, the doctrine of collateral estoppel requires, among other things, that there be a final judgment on the merits of the issue that the party seeks to preclude. Scott v. City of Newport, 2004 VT 64, at ¶ 8 (mem.). This limits what courts may preclude to those issues that have been resolved to some semblance of finality. 18 C. Wright, et al., Federal Practice and Procedure § 4420 (2002). As the

---

[1] The shareholders further argue that because collateral estoppel applies, the claims against Kevin Clayton, Alan Clayton, and Catherine Clayton-Richardson were filed out of time under 11A V.S.A. § 13.26 (a) (requiring a corporation to take action to a valuation challenge within 60 days). This argument does not follow logically from the facts. Even if collateral estoppel prevented the corporation from challenging the Claytons' assertion of dissenters' rights, its second claim requesting a determination of fair value for the shares would satisfy § 13.26.

Clayton case is currently pending there is no final judgment against the corporation on this issue. It would hardly be fair to preclude the corporation from litigating an issue that has not yet been adjudicated.

Characterizing this issue as one of collateral estoppel is also misleading. Instead, this statement should be seen for what it is, an admission by a party against its interest. V.R.E. 801(d)(2). At best, the corporation's answer is an admission that, in its opinion, the shareholders dissented in a timely manner. Shareholders are free to use that statement, as they have, in arguing that even the corporation has on some level acknowledged the timeliness and merit of their dissent, but it is hardly preclusive. While it is up to the parties to explain the import of this statement, its ultimate character is one of evidence rather than binding precedent.

This leads to the second problem with using the corporation's answer to "prove" whether shareholder's dissent was effective. As neither party disputes what the shareholders did before the stock consolidation meeting, the real disagreement is whether their actions were sufficient to provide notice under § 13.21. This is a legal conclusion for the court, not the parties, to make. While the corporation's admission may provide evidence of what it understood the situation to be, the ultimate question here is whether shareholders met the legal requirements of § 13.21. One party simply saying so does not settle the issue. To draw an analogy, a party to a car accident may "admit" in a deposition that she filed a document too late for the statutes of fraud, but such an admission does not mean her claim is barred for being out of time. What bars her claim is whether she actually filed her document after a date that the court determines. Certainly, this is evidence that would inform a legal determination but is not in and of itself a legal conclusion. So too, the

corporation's admission is evidence of their beliefs but is far from determinative.  As shareholders cite to no authority to the contrary, the court is unpersuaded by their line of reasoning.

As final preliminary matter, it is important to briefly discuss the purpose and function of the Vermont Business Corporation Act.  As one commentator phrased it:

> Business corporation law also must be flexible.  It must be adaptable to the particular needs of the individuals forming and operating corporations and to changes in the business environment.  In good times and bad, corporations change their structure, sell and repurchase shares of stock, and combine with other companies. . . .  The need for flexibility is constant.  Rigid rules quickly become outdated, increase the costs of doing business, and cause corporate flight to other states. . . . [C]orporate law must further state policies and also permit corporations to operate without undue restraint.

L.Smiddy, Vermont's Business Corporation Law: A Call for Much Needed Reform, 17 Vt. L.Rev. 3, 11 (1992).  In the context of dissenter's rights, this balance between state policies and corporate freedom is embodied in the remedial rights given to dissenters as a way of redress "when fundamental corporate changes are involuntarily imposed on them."  Id. at 44.  As that statement suggests, dissenter's rights are not intended to limit or proscribe corporate action, but rather to give dissenting shareholders a way out that preserves their investment interest in the company when they disagree with a significant action that a corporation is taking.  Id. at 45.

Dissenter's rights are not a new idea to corporate governance and were embodied in the predecessor to 11A V.S.A.'s chapter 13.  Id. at 46 (citing 11 V.S.A. §§ 2003, 2004 (1984)).  The difference between that system and the present one is that chapter 13 was adopted to expand the availability of dissenter's rights and streamline the procedures for

exercising them. Id. at 47–48. Thus, the byzantine and rigorous procedure of 11 V.S.A. §§ 2003, 2004 was supplanted by the more straightforward and expansive regime of chapter 13. Similarly as a remedial statute, chapter 13 "must be liberally construed in order to 'suppress the evil and advance the remedy' intended by the Legislature." Human Rights Comm'n v. Benevolent & Protective Order of Elks, 2004 VT 104, at ¶ 13 (quoting 3 N. Singer, Statutes and Statutory Construction § 60:1, at 183 (6th ed. 2001)).

At the same time, dissenter's rights are not meant to give shareholders an extraordinary ability to delay or stifle the will of the majority either to raise the "nuisance value" of their shares or to thwart the majority's intentions. 3 Am. Bar Assoc., Model Business Corporation Act Annotated 13-5 (3d ed. Supp. 1998–99) [hereinafter MBCA Annotated].[2] The intent of chapter 13 is to motivate parties "to settle their differences in private negotiations" without resort to judicial proceedings. Id. This is, after all, a remedial statute meant to give dissenters a way to protect their investment but little to nothing more. While it has been suggested that these rights provide an important check on improper management decisions, they are not inherent tools to neutralize corporate activity. Cf. Smiddy, supra, at 45 ("If enough dissenting shareholders exercise appraisal rights for a transaction approved by the majority, then the cost of purchasing the dissenting shares may cause management to rethink its course of action."). With these principles in mind, the court will address

---

[2] The Vermont Business Corporation Act was adopted from the 1984 version of the Model Business Corporation Act. Towle v. Robinson Springs Corp., 168 Vt. 226, 228 (1998); Smiddy, supra, at 5 n.1. This discussion will reference the MBCA and its commentary where it is applicable or insightful to the language and function of the VBCA. See also MBCA Annotated, at 13-12 (marking differences between the 1984 and 1999 versions of the MBCA).

the substantive parties claims.

The facts of this case are not disputed. On June 17, 2004, Shelburne Supermarket's Board of Directors approved a stock consolidation plan. Under this plan, the corporation would issue one new share of stock for every five shares of old stock. Any resulting fractional shares would be purchased by the corporation at a price set by an accounting valuation made the previous year. Shelburne Supermarket is a predominately family owned affair. Prior to the consolidation action, all of the shares were owned by Clayton siblings but for one non-familial shareholder.[3] For the purposes 11A V.S.A. §§ 6.01, 6.02, Shelburne Supermarket had only one class of stock with equal voting and shareholder rights. After the consolidation, there was still only one class of stock. As this consolidation required shareholder approval, a meeting was scheduled June 30. All shareholders were given proper notice of the meeting and their dissenter's rights, should they disagree with the consolidation. This was done in conformance with 11A V.S.A. § 13.20.

The minority Clayton shareholders, Kevin, Lisa, Alan, and Catherine sent notice to the corporation on June 28 that they intended to dissent. In the same letter, the dissenting siblings notified the corporation that they had given all their shares to Lisa who demanded appraisal rights under §13.21 for her and her sibling's shares, which she claimed to hold as beneficial owner. This transfer was further noticed by papers filed at the June 30 meeting memorializing the sibling's intent to vest Lisa with control and

---

[3] Kevin Clayton, Lisa Clayton, Alan Clayton, and Catherine Clayton-Richardson each owned 2.4 shares respectively. Their brother Steven Clayton owned 27.9 shares, and Bradley Miller, the only non-Clayton shareholder owned 12.5 shares.

ownership of all 9.6 dissenting shares. At the June 30 meeting, however, each sibling voted their own shares. Steven Clayton and Bradley Miller voted their 40.4 collective shares in favor of the consolidation. The siblings voted their 9.6 shares against it.

Following the meeting, the corporation sent notice to the dissenting shareholders that the consolidation had been approved and that their resulting fractional shares would be sold to the corporation. The corporation included a check with each these letter reimbursing the siblings for their fractional shares based on the previously announced valuation. All four dissenting siblings returned their checks on August 4 and made written demands for a higher valuation of their shares.[4] They also filed suit challenging the legitimacy of the corporation's actions under previous shareholder agreements. Clayton v. Shelburne Supermarket, No. S0876-04 CnC (Jul. 23, 2004). The corporation subsequently commenced this action on October 1 in accordance with § 13.30 to settle the issue of valuation. In the complaint, the corporation disputes that the shareholders' June 28 letter gave proper written notice of their intent to demand appraisal rights under § 13.21, in so far as Lisa Clayton was the only one who asserted any appraisal rights.

The corporation's claim is that Kevin, Alan, and Catherine failed to give proper written notice of their intent to assert appraisal rights, that is the right to demand that the corporation buy back their shares at a fair market value. This argument is based entirely on what the corporation

---

[4] Under § 13.28, the dissenting shareholders could have kept the payment and still preserved their right to demand a higher valuation. 11A V.S.A. § 13.28; Smiddy, supra, at 48–49.

characterizes as shortcomings in the siblings's June 28 letter.  In that letter, all four siblings notified the corporation that they intended to dissent from the consolidation proposal but only Lisa, on behalf of herself and as beneficial owner of other shares, notified the corporation that she intended to assert her appraisal rights.  As previously noted, § 13.21 establishes that a dissenting shareholder must give the corporation written notice of her intent in order to properly establish appraisal rights.  This notice may appear in this case to be somewhat superfluous since the corporation intended to compensate all four of the dissenting shareholders with what it asserts is a fair market value price, but properly asserted appraisal rights give dissenting shareholders the opportunity to demand a higher payment for their shares.  This is what the corporation seeks to block through its claim against Kevin, Alan, and Catherine.

Much of the confusion surrounding this issue stems from the siblings' attempt to transfer their interest in their shares to Lisa.  This transfer violated a 1988 shareholders' agreement, which required that a majority of the shareholders must approve of any intra-shareholder stock transfers, and the Clayton siblings have since withdrawn the attempted transfer presenting themselves in this case and their other action as the owners of 2.4 shares of Shelburne Supermarket stock.  But in late June 2004, the Claytons were operating under the belief that their transfer was valid and that Lisa was the beneficial owner of all 9.6 shares.  The corporation urges this court to follow the letter of § 13.21 in this matter and ignore what the siblings thought they had done.  It adopts the position that a voided transfer flows back to the point at which it was attempted.  Thus, title and control never left the individual siblings, and Lisa's notice on behalf of her siblings' shares was never effective because she was never the "beneficial owner" of any such share.  Since the other three siblings never

gave written notice of their intent to assert appraisal rights, they should not benefit from a voided transaction.[5]

This is an overly technical reading § 13.21 for its purpose of notifying the corporation of a party's intent to assert dissenter's rights. As noted in Professor Smiddy's commentary, chapter 13 was adopted to streamline and ease the process for asserting such rights. Smiddy, supra, at 48; see also H. Johnson & P. Bartlett, Jr., Is a Fistful of Dollars the Answer? A Critical Look at Dissenters' Rights under the Revised Model Business Corporation Act, 12 J.L. & Comm. 211, 216, 221 (1993). To properly assert appraisal rights, a dissenting shareholder must make her intent and demand known to the corporation at two separate times. The first, embodied in § 13.21, comes before the shareholders' meeting and has the stated purpose of giving the corporation notice of a shareholder's intent to dissent and demand appraisal rights. The second, embodied in § 13.23, comes after the shareholders' meeting and is the formal demand for payment and valuation. The difference between these two demands is illuminating. According to the official comment, the first notice "enables the corporation to determine how much of a cash payment may be required" and "to limit the number of persons to whom the corporation must give further notice." M.B.C.A. Annotated, at 13-59. This is essentially an opportunity for a company to get a head count and figure out what if any money it may have to lose if its action is passed. This may provide pause for a company, but it is by no means a formal ceremony.

---

[5] This argument seems to rely on a void/voidable distinction that is not apparent in § 13.21. See Klein v. Wolf Run Resort, 162 Vt. 506, 513 (1995) (Dooley, J., dissenting) (discussing the distinction between void and voidable contracts). The important question here is not about the validity of the transaction but whether the letter provided adequate notice to the corporation at the time.

Courts in other jurisdictions have looked quite liberally at attempts to satisfy this notice requirement.  See, e.g., Raab v. Villager Indus. Inc., 355 A.2d 888, 891 (Del. 1976);  Jaquith & Co. v Island Creek Coal Co., 219 A.2d 514, 516 (N.J. 1966) (shareholder's modified proxy form satisfied pre-meeting notice requirements for dissenter's rights).  This may be in part because the initial notice can be informal and the satisfying its purpose is much more important than satisfying any punctiliousness.

In contrast, the post-meeting demand for payment is considered a much more formal transaction between the dissenting shareholder and the corporation.  As one court noted:

> A demand for payment under § 262(b), on the other hand, requires the formality and legal technicality befitting a last step in the final transaction between the corporation and its dissenting stockholder.  A demand for payment must be properly and formally signed by or for all stockholders of record.

Raab, 355 A.2d at 892.  Many of Shelburne Supermarket's arguments about the shortcomings of the June 28 letter mirror this elevated concern toward the post-meeting demand for payment communication.  Yet, the Claytons' later communication is not at issue here as it appears to have satisfied the requirements of § 13.23.

In this case, the corporation hangs its argument around the botched stock transfer to Lisa Clayton.  This line of reasoning, however, is ultimately irrelevant to analyzing the § 13.21 merit of the letter.  As the siblings shareholders note, the letter adequately states that all four of them intended to dissent from the consolidation plan.  The letter, in its own way, is also unambiguous about the identity of the owners for whom Lisa is acting as the beneficial owner.  The third sentence of the June 28 letter

states that Kevin, Alan, and Catherine had transferred their interest in their stock to Lisa to hold as beneficial owner.[6] Thus, there is no serious question of identity when in the same letter Lisa gives § 13.21 notice for herself and "those for whom she is the beneficial owner." While this transfer would later be voided under the corporation's rules, at the time the siblings were fairly clear that they intended to dissent and to assert their dissenter's rights through Lisa. The corporation admits as much in its brief when it explains that it sent individual notices on July 2 to the Claytons, notwithstanding the alleged failure of three of them to properly serve notice under § 13.21, "in an abundance of caution." That is the corporation knew that the siblings had dissented and intended to assert their appraisal rights. Their notice, while imperfect, had certainly triggered some awareness on the part of the corporation.

Any other concerns embodied in § 13.21 are not particularly relevant here. As a small corporation, there was no danger or equitable problem in allowing the four siblings to assert their dissenters' rights since there were no other dissenting shareholders. The corporation was aware of just how many shareholders were dissenting and given their familial connection to the business it was highly likely that they would attempt to fully assert their dissenters' rights. The fact that the corporation was already planning on purchasing the siblings' shares also mitigates any lingering concerns about allowing the June 28 letter satisfy § 13.21. As this plan was already in place prior to the June 30 meeting, it would be somewhat disingenuous for the corporation to argue that any unexpected hardship attached to allowing the

---

[6] The briefs are silent as to why this transfer was attempted. It is possible that the dissenting siblings wanted to combine their stock so that at least one share could survive the consolidation.

siblings to assert their full appraisal rights. After all, this discussion is really just about the ability of the dissenting shareholders to make a challenge to the corporation's valuation. Therefore, the court concludes that the June 28 letter satisfied the sibling's duty under § 13.21, in that it put the corporation on notice that the siblings intended to assert appraisal rights for all 9.6 shares of dissenting stock.

The remaining question, whether the corporation properly complied with its articles of incorporation in the consolidation, is irrelevant to the present case. Dissenters have elected to pursue their appraisal rights under chapter 13. That election gives them the sole remedy of appraisal rights that they have chosen to pursue. As previously noted, chapter 13 represents a compromise between minority and majority interests. By electing to dissent and asserting appraisal rights, the siblings have chosen to leave the corporation and recoup their financial interest. Any arguments about corporate process, short of unlawful action or fraud, are outside the scope of this review. 11A V.S.A. § 13.02 (b). Therefore, beyond fraud or unlawfulness, scrutiny over the procedure that the corporation chose to use to conduct a consolidation is outside the scope of a dissenters' rights case.

To the extent that the shareholders' argument can be understood to mean that the consolidation was unlawful, a brief discussion is warranted. The dissenters argue that the consolidation was invalid because 1) it did not include a change to the articles of incorporation and 2) such a change would require the dissenters' approval as a voting group under 21 V.S.A. § 10.03(e)(1). To this second point, the dissenters rely on an improper use of the term "voting group." According to them, they qualify as a voting group because the consolidation would result in their disenfranchisement from the corporation. Thus, they would define the term to mean any group of

shareholders who are disproportionately affected by a fundamental change. Presumably, this would mean that almost any dissenting shareholder in a fundamental corporate change would qualify as a voting group. Under such a definition, dissenters seem to be proposing § 10.04 as a way of reasserting the old common-law principle of unanimity for corporate changes. Cf. Johnson & Bartlett, supra, at 212–16 (describing how the MBCA and chapter 13 replaced the common-law requirement unanimity). Of course, such an interpretation would violate the limits of chapter 13 and the compromise it represents. Id.

"Voting group" is actually a term of art that is defined in 11A V.S.A. § 1.40 (24) as

> [A]ll shares of one or more classes or series that under the articles of incorporation or this title are entitled to vote and be counted together collectively on a matter at a meeting of shareholders. All shares entitled by the articles of incorporation or this title to vote generally on the matter are for that purpose a single voting group.

Cf. Black's Law Dictionary at 1608 (8th ed. 2004) (classification of shareholders by the type of stock held for voting on corporate matters). In other words, a corporation has only one voting group unless it issues shares with different voting rights. See 11A V.S.A. §§ 6.01, 6.02 (defining how incorporators can issue different classes and series of stock). The evidence here shows that the corporation issued only one class and series of stock. While dissenters as minority shareholders may have been disproportionally affected by the consolidation, they had equal voting rights with the majority shareholders. Therefore, the requirements they cite in § 10.03 are inapposite and the second part of their argument must fail.

As to the dissenters' first point, the question is by and large moot.

At this point, any technical flaws that the consolidation has will not affect the purpose for which the court is involved with this case, namely the judicial appraisal of shares. 11A V.S.A. § 13.30. The corporation argues that it did not need to amend its articles of association to consolidate its shares. To support this, the corporation cites the permissive language in § 10.03 governing amendments. There is also additional language in § 6.04(1)(2) that empowers a corporation to "arrange for the disposition of fractional shares by the shareholders." Other jurisdictions working with the Model Business Corporation Act have either affirmed the power of the corporation to make such consolidations without amendment or have allowed the corporation to amend its articles afterwards. Goldman v. Union Bank & Trust, 765 P.2d 638, 640–41 (Colo. App. 1988) (affirming the corporation's power); Seed Products Intern., Inc. v. Owen, 768 P.2d 973, 975 (Utah App. 1989) (allowing for later amendment). Such flexibility fits with the general purpose of the Vermont Business Corporation Act to give corporations flexibility within the rules to allow them to adopt procedures to their individual needs. Smiddy, supra, at 11. In this case, either option would leave the dissenters in the same position: in the minority with their dissenting rights. Whether the corporation violated its corporate structure, however, is irrelevant as it does not void the consolidation.

Dissenters also challenge Steven Clayton's ownership of a majority of the shares in the corporation. This challenge refers to a dispute between Steven and his parents that is pending in Chittenden Superior Court. In re Shelburne Supermarket, No. S0065-03 CnC (Jan. 17, 2003). That case is an appeal from an arbitration giving Steven control over a majority of Shelburne Supermarket shares. The dissenters in this case argue that because the Shelburne Supermarket case is about the ownership of the

shares and is still pending Steven cannot prove that he controls a majority of Shelburne Supermarket stock. This argument mis-characterizes the case's present disposition. On September 11, 2003, this court issued a decision on the issue of ownership. In re Shelburne Supermarket, Findings of Fact, Conclusions of Law, and Notice of Decision, No. S0065-03 CnC (Katz, J., Jan. 17, 2003). There, this court affirmed the arbitration agreement and ordered that Steven be vested with title to and control over the stock shares. To the extent that this case remains open, it is only about tangential issues that do not affect the question of ownership for this case. The conclusion is that there is no evidence to support the claim that Steven Clayton lacks or lacked ownership and control over the majority stock shares that he voted in the consolidation plan.

Finally, dissenters have made an unsupported motion for fees and costs under § 13.31. Dissenters have not included any evidence or affidavits to support this motion. V.R.C.P. 7(b)(1). Briefly, § 13.31 does not appear to support a motion for expenses mid-trial. As discussed before, the provisions of § 13.23 allow dissenters to accept the corporation's payment and still retain the right to dissent. Smiddy, supra, at 48–49. Dissenters chose not to accept this payment. It is somewhat disingenuous for them to argue hardship now. Finally, there has been no evidence that the corporation failed to comply with its obligations under chapter 13. Nor does merely challenging dissenters' compliance equate to vexatious behavior. Dissenters' motion is dismissed.

In conclusion, the court finds that the dissenting shareholders properly asserted their appraisal rights prior to the June 30 shareholders meeting, and the corporation had enough notice to satisfy the requirements

of § 13.21.  The corporation's actions were legitimate within the context of its corporate structure.  To the extent such actions may or may not have completely conformed to the corporation's articles of incorporation, they do not affect the validity of the consolidation.  Moreover, as dissenters have invoked chapter 13, they are limited from further challenging the fairness or sensibility of the consolidation.  They have chosen to leave the corporation.  11A V.S.A. § 13.02(b).  This raises a point that neither party has briefed.  As § 13.02(b) makes appraisal rights the exclusive remedy for shareholders, the question is whether the other case, <u>Clayton v. Shelburne Supermarket</u>, No. S0876-04 CnC, has been mooted and should be consolidated with this one to as to avoid any further costs and unnecessary delay.  V.R.C.P. 42.  Apart from this, the sole remaining issue is whether the corporation properly valuated the payment that it made to the dissenting shareholders.

Based on the foregoing, plaintiff's motion for summary judgment is denied in part and granted in part.  Defendants' motion for summary judgment is denied in part and granted in part.  Defendants' motion for fees is dismissed.

Dated at Burlington, Vermont_____, 2005.

_____
Judge